FIRST NATIONAL BANK AND TRUST COMPANY OF EVANSTON *et al.*, Plaintiffs-Appellees, v. FIRST NATIONAL BANK OF SKOKIE *et al.*, Defendants-Appellants.

First District (5th Division)   No. 85—3667

Opinion filed September 23, 1988.

.Thomas G. Poulakidas, of Chicago, for appellants.

Joseph W. Bonner, of Chicago, for appellees.

JUSTICE PINCHAM delivered the opinion of the court:

Plaintiffs, First National Bank and Trust Company of Evanston (Evanston Bank as seller-trustee) *et al.*, brought this action against defendants, First National Bank of Skokie (Skokie Bank, as purchaser-trustee) *et al.*, seeking a declaratory judgment that defendants had improperly terminated and breached a contract for defendants' purchase of plaintiffs' real estate entitling plaintiffs to the earnest money defendants posted with an escrowee as required by the contract. The trial court granted summary judgment for the plaintiffs from which defendants appeal. We affirm.

Plaintiff Evanston Bank, as a nominee land trust, owned fee simple title to an eight-acre parcel of vacant land (the land) in the Village of Hoffman Estates (the Village). The land had been zoned by the Village as B-2, a business category. In 1984, defendant Skokie Bank's beneficiaries, Allen Schmidt and Nicholas Trossman, initiated oral negotiations with plaintiff Evanston Bank's beneficiary, Allen Brown, regarding Schmidt's potential purchase of the land. Schmidt and Trossman expressed the desire to use the land for multifamily dwellings in the A-1 zoning category. As the Village was opposed to additional A-1, multifamily dwellings, the parties discussed the possibilities of obtaining rezoning and the difficulties Schmidt could expect to encounter in his efforts to have the Village rezone the land to A-1 for multifamily dwellings.

Brown convinced plaintiff to sell the land by means of a land trust controlled by defendants Schmidt and Trossman, and on April 20, 1984, the contract was executed by the respective trustees, plaintiff-seller, Evanston Bank, and defendant-purchaser, Skokie Bank. The contract stated that the defendants, *inter alia*, acknowledged receipt from the plaintiff of the following:

    (A) a survey and topographical map;

    (B) a soils report;

    (C) a natural resource assessment;

    (D) various analyses of marketing, employment, air quality, noise, public services, etc. related to the land;

    (E) a community impact statement; and

    (F) the zoning code of the Village.

Plaintiff had the foregoing materials prepared at an alleged cost of $50,000 and gave copies of them to defendants, free of charge, in

order to expedite Schmidt and Trossman's efforts to have the land rezoned to A-1. The contract price of the land was $453,024. In accordance with the terms of the contract, defendants deposited $20,000 earnest money in escrow with a title company. The contract stated further that defendants promised that on or before July 15, 1984, defendants would file applications, the required fees, an information package, and a community impact statement with the Village's plan commission and zoning board of appeals. Additionally, the contract stated that if the purchaser timely fulfilled these covenants, but was unable to obtain the A-1 zoning by October 1, 1984, then the purchaser could either extend the date for fulfillment of the covenants, on payment of $2,000 per month or, in the alternative, rescind the contract, in which event the earnest money and any interest earned would be refunded to the purchaser. The contract provided further that if the contract was terminated through the fault of the purchaser, then the earnest money would be retained by plaintiff as liquidated damages and conversely, if the contract was terminated through the fault of the seller, then the earnest money would be refunded to the purchaser.

Less than one month after the parties had entered into the contract, on May 11, 1984, Trossman sent Brown a letter which stated that his attorney had informed him that the rezoning application procedure would take a much longer time than the October 1, 1984, date allowed under the contract, that the chance of success of the rezoning application was unlikely and that, "Therefore, the contract of April 20, 1984 is herewith terminated." Trossman's letter also requested a refund of the earnest money to the defendant-purchaser. Brown responded to Trossman's letter with a letter to Schmidt, dated May 15, 1984, urging Schmidt to reconsider and pointing out that Schmidt had not yet begun to perform his promises under the contract. Neither Schmidt nor Trossman responded to Brown's request for reconsideration. On May 29, 1984, and June 5, 1984, by letters, plaintiff-seller, Evanston Bank, declared defendants in default on the contract.

On June 15, 1984, an attorney for Schmidt wrote a letter to Brown which stated, *inter alia*, that an attorney had informed Schmidt that it would take a minimum of three months for the Village to process a zoning amendment and that therefore it was impossible for Schmidt to file the required rezoning documents with the Village by the date required in the contract, July 15, 1984. Schmidt's letter to Brown stated further that, since the contract gave the purchaser the option to terminate the contract if rezoning was not obtained by October 1, 1984, and since, under the circumstances, he could not meet

the contingencies of the contract, "the contract should be terminated." Schmidt's letter further demanded a refund of the earnest money. Plaintiff Evanston Bank subsequently initiated the instant lawsuit requesting a declaratory judgment to adjudicate the rights of the parties under the contract.

In response to plaintiff's complaint, defendant filed an answer which affirmatively set forth the allegation that the zoning code of the Village did not include an A-1, multifamily dwelling category and that defendants' nonperformance under the contract was therefore excused. Plaintiff's reply denied the allegations in defendant's answer.

Plaintiff filed a motion for summary judgment and submitted to the trial court a copy of the Village's zoning code, article 6 of which contained an A-1 apartment district. The zoning code contained the following statements:

"Section 9—5—9. *R-9 PLANNED DEVELOPMENT DISTRICT.*

A. Legislative Intent—The purpose of the R-9 Planned Development District is to permit the development of various residential uses, business uses and public uses of land in an ordered manner. \*\*\* This district has been approved by the Village Board consistent with a court settlement and it is the intent of the Village Board not to expand this district or to permit the district's application to other areas of the Village.
\*\*\*

Section 9—6—1. *A-1 APARTMENT DISTRICT.*

A. Legislative Intent—Establishment of the A-1 Apartment District is in recognition of the existence of areas developed under earlier zoning requirements within townhouse and multiple family units. The intent of the Village Board is not to expand this district or to permit the district's application to other areas of the Village.

B. Permitted Uses—

1. Permitted uses of land or buildings, as hereinafter listed, shall be permitted in the A-1 Apartment District under the conditions specified and, in addition, two or more buildings containing single-family semi-detached (townhouses) dwellings, or multiple-family dwellings may be located on a zoning lot. \*\*\*

2. The following uses are permitted in the A-1 Apartment District:
\*\*\*

b. Dwellings, Multiple \*\*\*."

In defendants' amended answer to plaintiffs' motion for summary

judgment, defendants denied that Trossman's letter of May 11, 1984, effectuated a termination of the contract. Defendants' amended answer also stated that defendants could continue in their attempts to obtain rezoning of the land despite the instant lawsuit. Additionally, even though defendants had not filed the applications for rezoning as required under the contract, defendants' amended answer alleged that defendants had exercised due diligence in attempting to comply with the terms of the contract. Schmidt and Trossman claimed that they had taken action to secure the rezoning, after Trossman's letter of May 11, 1984, to plaintiff terminating the contract and requesting the refund of the earnest money to defendant and also after plaintiff's May 29, 1984, letter to defendants acknowledging defendants' termination of and default under the contract.

Plaintiffs' reply to defendants' amended answer to plaintiff's motion for summary judgment stated that any actions taken by defendants to secure the rezoning subsequent to the termination of the contract were irrelevant; that all of defendants' actions to secure the rezoning were taken after the initiation of the instant lawsuit; and that defendant and defendant's beneficiaries, Schmidt and Trossman, had perjured themselves, by feigning an interest in the land when they wrote letters to the Village, in an attempt to convince the court that they were performing in accordance with the terms of the contract.

Prior to the hearing on plaintiff's motion for summary judgment, defendants filed a cross-motion for summary judgment to which were appended certain documents which indicated that in December 1984 and January 1985 Schmidt continued to advise the Village that he desired rezoning of the land.

The trial court heard oral arguments on the plaintiffs' and defendants' cross-motions for summary judgment, reiterated the agreement of counsel for plaintiffs and defendants that there were no material issues of fact and found:

"(A) That the parties are entitled to a declaration of their respective rights under the *** contract ***.

(B) That the parties, in their respective Motions for Summary Judgments, as well as in oral argument, have both contended, that with respect to the Contract (and whether or not the same has been breached), that there are no triable issues of fact.

(C) That Defendant's actions and/or omissions in failing and/or refusing to file certain documents with the Village *** constituted an anticipatory breach on its part. *** Defendant's

letter of May 11, 1984, *** constituted an express repudiation of the Contract; which repudiation was never retracted. Accordingly, Plaintiff's action in subsequently declaring the same to be an anticipatory breach of the contract, was valid and/or proper; and the Contract was terminated with fault on the part of the Defendant, and without fault on the part of the Plaintiff.

(D) That per the Contract, all earnest monies and all interest thereon posted by and/or on behalf of the Defendant shall be retained by the plaintiff as its contractual liquidated damages.

(E) That the equities of this case are with the Plaintiff and against the Defendant."

The trial court entered judgment in favor of plaintiffs and against defendants. The trial court further declared, *inter alia*, that the contract was terminated by the fault of the defendants and without the fault of plaintiffs; that the title company was ordered to turn over the $20,000 in escrow and the interest earned thereon to plaintiff; and that such funds were plaintiffs' complete liquidated damages for defendants' termination and breach of the contract.

On appeal, defendants first contend that neither their letter of May 11, 1984, nor any of their other actions constituted an anticipatory breach of the contract; and that even if there was an anticipatory breach, then that breach was justified by principles of avoidance and equity. Specifically, defendants contend that Trossman's letter of May 11, 1984, was only an offer to terminate the contract and not an anticipatory repudiation. Defendants maintain that their declaration that the contract was terminated because performance was impossible under the contract terms was merely an invitation to the plaintiff to alter the contract. We disagree.

■ In *Stonecipher v. Pillatsch* (1975), 30 Ill. App. 3d 140, 332 N.E.2d 151, the court reiterated the standards relating to the repudiation of a contract and the treatment of such an anticipatory breach, stating as follows:

> "When a party bound by an executory contract gives notice of his intention not to comply with his obligations, the other contracting party may accept such notice as an anticipatory breach and treat the contract as ended without waiting for the completion of the contract by its terms. [Citations.] In order to justify the adverse party in treating a renunciation as an anticipatory breach of a contract there must be a definite and unequivocal manifestation of intention that the party will not render the promised performance when the time fixed for it in the

contract arrives. [Citations.] *A definite statement to the promissee that the promissor either will not or cannot perform the contract will operate as an anticipatory breach.* [Citations.]" (Emphasis added.) 30 Ill. App. 3d at 142-43.

Defendants erroneously rely on *Farwell Construction Co. v. Ticktin* (1978), 59 Ill. App. 3d 954, 376 N.E.2d 621, in support of their argument that their refusal to perform did not constitute an anticipatory breach because the parties disagreed on the interpretation of the contract and because the time within which defendants' duty to perform a condition under the contract had not expired. In *Farwell*, also an action for breach of a real estate sales contract, defendants promised to pay plaintiff for any charges required by the Federal Housing Administration (FHA) in the architectural plans of their project which would increase the construction costs by more than $20,000. By letter, plaintiff notified defendants that the FHA required changes in the plans as a condition precedent to the issuance of an insurance commitment. In another letter, plaintiff attached a list of 12 changes which plaintiff asserted were required by the FHA and an estimate of the additional construction costs for those changes, for which plaintiff claimed a credit of $122,079. Defendants replied that the 12 changes were not required by the FHA as plaintiff had asserted and therefore plaintiff was not entitled to the claimed credit. This court stated:

"When a party to an executory contract gives notice of his intention not to comply with his obligations or otherwise repudiates his obligations before the time of performance, the other party may treat such notice as an anticipatory breach and regard the contract as terminated. [Citations.] Before the promissee is justified in treating a renunciation as an anticipatory breach, there must be a positive and unequivocal manifestation of intention that the promisor will not render the promised performance when the time fixed in that contract has arrived. [Citations.] *A definite statement to the promissee that the promisor either will not or cannot perform the contract will operate as an anticipatory breach.* [Citations.] On the other hand, a refusal to perform does not amount to an anticipatory breach where it is due to a promisor's good faith belief that a condition of his duty to perform has not happened [citation], or where the parties disagree in the interpretation of the contract [citation], or where doubtful and indefinite statements are made that performance may or may not take place or mere requests to change the terms of a contract are made. [Citation.]
***

In view of the conflicting testimony of the witnesses and because we may not determine their credibility or the weight to be given their testimony, we are unable to say that there was a positive and unequivocal manifestation of intention on the part of defendants not to render the promised performance of the agreement at the time fixed in the contract ***." (Emphasis added.) 59 Ill. App. 3d at 961-62.

■ In the instant case, unlike in *Farwell*, Trossman stated in his May 11, 1984, letter to plaintiff, "*[T]he contract of April 20, 1984, is herewith terminated*," and demanded return of the earnest money. Trossman cannot persuade that these expressions were merely an "offer" to terminate the contract or that they were an invitation to alter the contract. Trossman's foregoing language, in his May 11, 1984, letter, by its very terms, clearly, expressly and unequivocally terminated the contract. Nothing in Trossman's letter remotely resembled an offer to terminate or an invitation to alter the contract.

The contract clearly stated that if defendant performed the covenants, *i.e.*, filed applications, fees, an information packet, and a community impact statement with the Village's plan commission and zoning board of appeals on or before July 15, 1984, but was unable to obtain the A-1 zoning by October 1, 1984, then defendant could either extend the date for fulfillment of the covenants or rescind the contract and acquire the right to the return of the earnest money. Under the circumstances, defendant had merely to fulfill the covenants by July 15, 1984, and if or when the A-1 zoning was not obtained by October 1, 1984, exercise a contract option to either extend the date for fulfillment of the covenants or rescind the contract.

Neither can defendants persuade that their refusal to perform did not constitute an anticipatory breach because of a disagreement on the interpretation of the contract. On May 15, 1984, after receiving Trossman's letter, Brown sent Schmidt a letter urging Schmidt to reconsider. The letter stated in pertinent part:

"To my knowledge, a point in time when you haven't even filed a zoning application, you want to cancel the transaction.
***

If, in reality its [*sic*] a question of money, we will listen to your proposals. If, however, you've simply decided to 'walk,' the Seller concludes that the said letter of Trossman is an anticipatory breach of the contract, and will act on that conclusion, in accordance with its rights per paragraph No. 20 [regarding termination caused by the purchaser's fault and the seller's resultant right to retain the earnest money as liqui-

dated damages] of the contract.

Accordingly, we ask that you review your obligations and/or responsibilities, and then firmly advise us of your decision."

Defendants did not answer Brown's letter, propose any plan for fulfillment of the contract or take any action whatsoever to indicate a difference in plaintiffs' interpretation that the contract had been terminated by the defendants. Plaintiffs therefore quite properly considered the contract terminated by defendants.

We are also unconvinced that defendants' refusal to perform did not constitute an anticipatory breach because the time within which defendants were required to perform a condition under the terms of the contract had not arrived or expired. The contract imposed an obligation on defendants to file the documents with the Village by July 15, 1984, which was two months after defendants' refusal of May 11, 1984, to perform under the contract. We unequivocally conclude that Trossman's letter of May 11, 1984, coupled with defendants' failure to respond to Brown's letter of May 15, 1984, constituted a willful and unequivocal anticipatory breach.

■ Defendants contend that they are entitled to a refund of the earnest money based on the principle that the law abhors a forfeiture and will not enforce a forfeiture clause in a contract if an injustice would result therefrom. Conversely, it is well settled that the law enforces a contractual right to a forfeiture, when that right to the forfeiture is clear, unequivocal and will not result in an injustice. (*Aden v. Alwardt* (1979), 76 Ill. App. 3d 54, 59, 394 N.E.2d 716.) Moreover, when parties dealing at arm's length enter into a contract, the law allows them, within reasonable limits, to shape the terms of that contract according to their own desires. The contracting parties may, within reasonable limits, exclude or restrict the remedies available for a breach of the contract for a financial loss. If the contract is breached, and the only damages claimed are monetary damages, the court looks first to the contract to determine if and to what extent the injured party may recover those losses. *Album Graphics, Inc. v. Beatrice Foods Co.* (1980), 87 Ill. App. 3d 338, 408 N.E.2d 1041.

■ Realistically, defendants Schmidt and Trossman were all relatively sophisticated real estate developers who, with the assistance of their counsel, negotiated a contract for their purchase of a large and valuable tract of land from plaintiff. The purchasers-defendants willfully breached the contract, which expressly provided that a breach caused by the fault of the purchaser would result in the purchaser's forfeiture of the earnest money as the liquidated damages for the seller-plaintiff. As plaintiff's contractual right to retain the earnest

money was clear and unequivocal, we conclude that the trial court properly declared that plaintiff was entitled to retain the earnest money.

Defendants next contend that they were entitled to summary judgment. In view of the foregoing conclusions that defendants willfully and unequivocally breached the contract and were not entitled to the earnest money, defendants cannot be said to have been entitled to judgment as a matter of law.

■ Defendants finally contend that the trial court erred when it dismissed defendants' third-party complaint and counterclaim against plaintiffs on the ground that neither alleged a cause of action under the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*). We disagree. Regarding the Consumer Fraud and Deceptive Business Practices Act, defendants' initial third-party complaint simply alleged:

> "Brown's actions in failing to advise the Purchasers that the Zoning Code of the Village of Hoffman Estates contained no category wherein an application for zoning for a density of 24 units per acre would be accepted is a material omission of fact which is actionable pursuant to Chapter 121½, Section 261 *et seq.* of Illinois Revised Statutes which is known as the Consumer Fraud and Deceptive Business Practices Act."

Defendants' amended third-party complaint and amended counterclaim merely claimed:

> "That the said Defendants-Counter-Plaintiffs and Third Party Plaintiffs are businessmen within the meaning and express definition of an act to protect businessmen from fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any commerce in the State of Illinois *** commonly known as Chapter 121½, Ill. Rev. Stat. 1973, etc., Sec. 261 etc. Said Plaintiffs are further persons as expressly defined in said Act in Section 261, subparagraph (c). The transactions and occurrences hereinafter described are expressly defined as 'commerce' within the terms of the said Act specifically in said Section 261(f). That the acts of the Counter-Defendants, Plaintiffs, Third Party Defendants, are unlawful practices, fraud, unfair methods of competition, unfair or deceptive acts or practices in the conduct of commerce specifically defined in said Act and in said Section 262."

"Section 261, subparagraph (c)" of the Act relied upon and cited by the defendants in their amended third-party complaint and amended counterclaim, simply defines "person" as any trust, business

entity or association, etc. "Section 261, subparagraph (f)" of the Act also relied upon and cited by the defendants in their amended third-party complaint and amended counterclaim, simply defines "commerce" to mean, *inter alia*, offering any real or personal property for sale.

In defendants' third-party complaint and counterclaim and the amendments thereto, the only deceptive behavior in which plaintiff was alleged by defendants to have engaged was plaintiffs alleged failure to advise defendants that the A-1 zoning did not exist within the Village and that it was the intent of the Village not to zone for that category. Defendants' contention is without merit, since the A-1 zoning and the Village's intent regarding such zoning were clearly set forth in the Village's zoning code, which was made a part of the contract for the defendants' purchase of the land. Defendants cannot now convincingly contend that they were deceived about the Village's intent to limit the expansion of the A-1 category and the attending difficulties with obtaining A-1 zoning for the subject parcel of land or that it was impossible for defendants to comply with the covenants of the contract which required defendants to perform specific functions, by a specific date, in order to secure the Village's rezoning of the land from B-2 to A-1. Additionally, defendants, one of whom was an attorney, and who were also represented throughout the transaction by an attorney, cannot persuasively claim to have been deceived by plaintiffs' alleged failure to advise them on the contents of the zoning code, particularly when plaintiffs provided the defendants with a copy of the Village's zoning code. The trial court properly concluded that defendants failed to state a cause of action under the Consumer Fraud and Deceptive Business Practices Act and therefore correctly dismissed defendants' third-party complaint and counterclaim.

The judgment of the trial court is affirmed.

Affirmed.

LORENZ, P.J., and MURRAY, J., concur.