NICHOLAS NIKOLOPULOS, Plaintiff-Appellant, v. STEVEN BALOUR-DOS *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—92—0475

Opinion filed April 12, 1993.

Flamm & Teibloom, Ltd., of Chicago (Matthew A. Flamm, of counsel), for appellant.

Jenner & Block, of Chicago (Kenneth A. Kroot, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

This case arises from a declaratory judgment action filed by plaintiff Nicholas Nikolopulos, a prospective purchaser of a condominium unit, against defendants Steven Balourdos, J.B. Realty, Inc., and Frederick Dempsey. Plaintiff sought a judgment declaring the real estate sales contract between him and the seller, defendant Balourdos, terminated due to breaches of the contract by defendant Balourdos or, in the alternative, declaring the contract unenforceable due to defendant Balourdos' failing to timely reveal that title to the condominium unit was held in a land trust. Plaintiff also

sought return of his earnest money. The circuit court entered judgment for defendants and declared that plaintiff forfeited the earnest money. We reverse and remand this cause with instructions.

Plaintiff entered into a real estate contract on March 12, 1990, for the purchase of a condominium unit located at 535 North Michigan Avenue. The original contract was signed by plaintiff, but never signed by the seller named in it, "J.B. Realty/Owner of Record." Shortly thereafter, plaintiff received a letter from defendant Dempsey, defendant Balourdos' attorney, amending the contract to state *inter alia* that "Steven Balourdos has been substituted as the Owner of Record for J.B. Realty." Richard Orlikoff, plaintiff's attorney, also wrote a letter amending the contract, in particular, paragraph 2. Incorporating these amendments, paragraph 2 of the contract states in pertinent part:

> "Steven Balourdos/Owner of Record (Seller) agrees to sell the real estate *** and to convey or cause to be conveyed to Purchaser *** subject only to: (b) terms, provisions, covenants, and conditions of the Declaration of Condominium or amendments, if any, thereto; (c) and utility easement, including any easements established by or implied from the Declaration of Condominium or amendments thereto, if any ***."

Plaintiff deposited a total of $13,100 as earnest money. This earnest money is held by defendant Dempsey's law firm in an interest-bearing account at the First American Bank of Northeast Illinois.

In the first week of June 1990, Orlikoff received a copy of a title commitment showing title to the condominium unit to be held in a land trust. Upon receipt of the commitment, Orlikoff called defendant Dempsey and informed him that plaintiff required an individual warranty deed for closing to which defendant Dempsey agreed. Additionally, Orlikoff requested copies of the easements shown in the commitment and the financial statements of the condominium association. He also expressed concern about other title exceptions shown on the commitment. Defendant Dempsey assured him that those exceptions would be cleared from the commitment. Later in June, Orlikoff received some of the requested documents, but no copies of the easements were included and only the financial statements for 1987 and 1988 were received.

On July 2, 1990, defendant Dempsey, plaintiff, Orlikoff and Arthur Balourdos, defendant Balourdos' nephew, met at Chicago Title & Trust to close the sale. Defendant Dempsey and Arthur Balourdos presented an individual warranty deed signed by defendant

Balourdos as the seller. The warranty deed, however, could not transfer title because the property was held in a land trust. Neither the closing officer nor plaintiff was given any information as to who the beneficiary of the trust was or who had power to direct the trustee. Orlikoff reiterated that only an individual warranty deed would be acceptable.

The exceptions on the title commitment were also discussed at the attempted closing. Orlikoff requested that exception 13, concerning the declaration of easements, covenants and restrictions made by American National Bank & Trust Company of Chicago, be waived. The title examiner refused to waive exception 13 or any of the other exceptions. The title examiner explained that the only exception which could be waived was the one referring to the City of Chicago lawsuit, which had been dismissed, but that the exceptions relating to the easements could not be waived. At this time, defendant Dempsey gave Orlikoff a copy of the 1989 financial statement for the condominium association. The closing was postponed until July 9, 1990. Orlikoff agreed to the extension, explaining that he wanted to examine the exceptions to title on the commitment, other documents referred to in the commitment, and the condominium association's 1989 financial statement. Plaintiff never agreed to take title subject to any exceptions and did not expressly waive any provision of the contract.

After conferring with plaintiff, Orlikoff called defendant Dempsey and the closing officer to cancel the July 9 appointment, but was unable to reach them. The following day he spoke with defendant Dempsey and informed him that the contract was terminated. Defendant Dempsey responded that defendant Balourdos was going through with the closing on July 9. On that date, defendant Dempsey and Arthur Balourdos met with the closing officer and presented documents which the officer believed would transfer title; however, none of the exceptions on the commitment were ever waived.

Plaintiff demanded return of the earnest money based on his termination of the contract. Defendants refused. As a result, plaintiff filed the declaratory judgment action in which the circuit court entered judgment for defendants and declared the earnest money forfeited. Now, plaintiff appeals.

The granting or denying of declaratory relief rests within the sound discretion of the circuit court. (*Marlow v. American Suzuki Motor Corp.* (1991), 222 Ill. App. 3d 722, 584 N.E.2d 345.) On appeal, the complaining party must show affirmatively an abuse of

discretion. *Charleston National Bank v. Muller* (1974), 16 Ill. App. 3d 380, 306 N.E.2d 358.

Plaintiff first argues that the circuit court erred in entering judgment for defendants because defendant Balourdos was required to deliver title in the condition and manner set forth in the real estate contract and he was unable to accomplish this. After Orlikoff amended the contract, it required, in pertinent part, that the condominium unit be only subject to the terms, provisions, covenants and conditions of the declaration of condominium and all amendments and utility easements established by or implied from the declaration of condominium or amendments thereto. The commitment, however, listed several easements, some contained in the declaration of easements, covenants and restrictions, as exceptions. Several of the easements benefited the owners of the commercial properties located in the same building as the condominium unit. The commitment also indicated other exceptions, including a $400,000 mortgage, an IRS revenue lien and a suit filed by the City of Chicago.

At the attempted closing, the title officer stated that only one exception could be waived. The record is devoid of any evidence or testimony that any of the title exceptions relating to the easements contained in the declaration of easements, covenants and restrictions were ever waived. The title exceptions concerned easements directly affecting the use of and the cost of owning the property. Some of these easements indicated that the condominium association undertakes a duty to maintain facilities located on the residential property for the benefit of the commercial property, including mandates that the residents of the building share the expenses of operating the building with the commercial retail stores located on the lower levels of the building. Furthermore, the easements confer upon the commercial property owners rights of ingress and egress to the residential portions of the building.

The terms of the real estate contract provide plaintiff a right to refuse to take title subject to easements, other than utility easements or those implied from the declaration of condominium. We agree that since the complained-of easements are contained in a document completely separate from the declaration of condominium, are between different parties and were entered into at a different time than the declaration of condominium, plaintiff had a right to terminate the contract and properly did so.

Relying on *Larson v. Johnson* (1953), 1 Ill. App. 2d 36, 116 N.E.2d 187, defendants contend that plaintiff's above argument must fail because he violated the doctrine of "mend the hold,"

which according to defendants states that once a party who terminates a contract has, either before or during the course of litigation, cited specific grounds justifying the termination, he cannot assert additional or other grounds to justify the termination later in the litigation. Defendants, however, take liberty with the *Larson* opinion. *Larson* actually states that the mend-the-hold doctrine precludes a party from "chang[ing] his ground, and put[ting] his conduct upon another and a different consideration." (*Larson*, 1 Ill. App. 2d at 40, 116 N.E.2d at 189.) Defendants argue that plaintiff referred at trial to additional grounds not contained in the complaint, such as "certain *covenants* in the Declaration of Easements, Covenants and Restrictions (as distinct from the existence of *easements* as alleged in plaintiff's complaint)" (emphasis added) and "other conditions and restrictions of record including encroachments, a $400,000 mortgage, an IRS revenue lien, and a suit filed by the City of Chicago," thereby violating the mend-the-hold doctrine.

Defendants waived the mend-the-hold argument. Defendants only objected at trial to the admissibility of Orlikoff's and defendant Dempsey's letters amending the real estate contract. The circuit court allowed the letters admitted into evidence and further allowed plaintiff to amend his complaint to include allegations that the letters were made part of the contract. After reviewing the record, it is clear that during trial, all the above-mentioned restrictions, including covenants burdening the residential property which are set forth in the declaration of easements, covenants and restrictions, were placed in issue, argued by both plaintiff and defendants and considered by the trial court. When defendants failed to object at trial to a variance between plaintiff's pleadings and proof, any such defect was waived. See *Petrik v. Monarch Printing Corp.* (1986), 143 Ill. App. 3d 1, 493 N.E.2d 616.

■ Plaintiff's second contention is that the agreement to extend the closing date did not serve as a waiver or an agreement to change any of the provisions of the real estate contract. We agree. Pursuant to the real estate sales contract, plaintiff retained his right to review the condominium association's 1989 financial statement.

Defendants argue that plaintiff cannot terminate the contract on the basis of information contained in the condominium association's 1989 financial statement because such a right is not expressly provided by the Condominium Property Act (the Act) (Ill. Rev. Stat. 1989, ch. 30, par. 322.1). To give a prospective purchaser a right to

review financial statements would be meaningless if the purchaser is left without a remedy when previously undisclosed financial conditions reveal a substantial additional financial burden on the owners of condominium units or reveal previously undisclosed defects in the unit or building. Therefore, plaintiff argues that we should imply a private remedy from section 22.1 of the Act.

In determining whether a statute creates an implied private remedy, we must consider: (1) whether the plaintiff is within the class of persons the statute is designed to protect; (2) whether implying the cause of action is consistent with the underlying purpose of the act; (3) whether the plaintiff's injury is one the statute was designed to prevent; and (4) whether implying a cause of action is necessary to effectuate the purpose of the act. (*Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 470, 546 N.E.2d 580, 599.) First, section 22.1 of the Act was clearly designed to protect prospective purchasers of condominium units; therefore, plaintiff falls within the intended protected class. Second, implying that plaintiff may terminate the contract, if unsatisfactory information is disclosed by the documents, is consistent with assuring that a prospective purchaser is fully informed and satisfied before he buys a condominium unit. Third, the statute was designed to prevent prospective purchasers from buying a unit without being fully informed and satisfied with the financial stability of the condominium as well as the management, rules and regulations which affect the unit he is seeking to purchase. Fourth, implying that if the information contained in the documents is unsatisfactory, a prospective purchaser may terminate the contract and demand return of his earnest money effectuates the purpose of the Act.

Plaintiff was entitled to review the condominium association's financial statements. We find that implied in this right to review is the right to terminate the contract within a reasonable time after being furnished information revealing previously undisclosed material expenses. The 1989 financial statement revealed that the windows of the condominium building had to be replaced at a cost of $2,750,000 and that the work would be performed over a period of five to seven years. The cost of replacing the windows directly impacts upon plaintiff's financial burden if he were to purchase the unit. Accordingly, we find that this previously undisclosed condition allows plaintiff to terminate the contract and entitles him to the return of his earnest money plus interest accrued thereon.

■■ Next, plaintiff argues that the circuit court erred in finding for defendants because a seller who is neither the trustee nor the

beneficiary of a land trust cannot enforce a real estate contract against a buyer who was not informed that the property was in trust. Prior to receiving the title commitment in the first week of June 1990, plaintiff had no knowledge that the property was held in a trust. After receiving this commitment, Orlikoff called defendant Dempsey, pointed out that the land was in a trust, asked defendant Dempsey if he wanted to amend the contract and asked whether plaintiff would receive an individual warranty deed. Defendant Dempsey stated that he did not want to amend the contract and that an individual warranty deed would be given at closing. Defendants did present plaintiff with an individual warranty deed at closing; however, the title officer would not accept it because the land was in a trust. Additionally, neither the title company nor plaintiff was informed that defendant Balourdos was the beneficiary of the land trust until after the underlying declaratory action was filed. Thus, defendant Balourdos' actions as seller indicated that he was ignoring the fact that the land was in a trust.

"[I]f a beneficiary of a land trust deals with the property as if no trust existed and contracts as owner to sell the property, the contract is void as being beyond the beneficiary's power to act." (*Jacobs v. Carroll* (1977), 46 Ill. App. 3d 74, 79, 360 N.E.2d 136, 139.) Defendant Balourdos contracted as owner of record to sell the property. Neither plaintiff nor Orlikoff knew that the land was in trust until they received the title commitment and, furthermore, did not discover that defendant Balourdos was the beneficiary until this lawsuit. We, therefore, find that since defendant Balourdos did not properly exercise the power he possessed under the trust agreement, because he did not direct the trustee to convey the title and did not contract as the sole beneficiary to sell the property, but rather contracted as owner of the property, defendant Balourdos went beyond his power. (See *Madigan v. Buehr* (1970), 125 Ill. App. 2d 8, 260 N.E.2d 431.) Accordingly, we hold that this contract, executed by one of the beneficiaries without disclosure of the existence of the land trust, was unenforceable against plaintiff. See *Madigan v. Buehr* (1970), 125 Ill. App. 2d 8, 260 N.E.2d 431.

Defendants argue that the language of the real estate contract, specifically, "cause to convey," put plaintiff on notice that the title was held in trust and, therefore, such "notice" makes the contract enforceable. Defendants also argue that the "/" between "Steven Balourdos" and "owner of record" in the contract means "or," thereby allowing defendant Balourdos to "convey" the unit to plaintiff without disclosing the fact that the property is held in a land

trust. This is directly refuted by defendant Dempsey's letter. That letter amending the real estate contract explicitly stated that "Steven Balourdos has been substituted *as the owner of record* \*\*\*." (Emphasis added.) The "/" was not intended to mean and does not mean "or."

■■ Finally, plaintiff argues that the circuit court erred in finding for defendants because a seller who cannot deliver the title for which the purchaser contracted cannot enforce a contract and obtain forfeiture of earnest money deposited by the buyer under the doctrine of anticipatory breach. After termination of a real estate contract is declared, subsequent performance will not relieve the offending party. (*First National Bank v. Chrysler Realty Corp.* (1988), 168 Ill. App. 3d 784, 522 N.E.2d 1298.) A "refusal to perform does not amount to an anticipatory breach where it is due to a promisor's good faith belief that a condition of his duty to perform has not happened." (*First National Bank & Trust Co. v. First National Bank* (1988), 178 Ill. App. 3d 180, 186, 533 N.E.2d 8, 13.) The burden of establishing the ability to perform rests with the party seeking to enforce the contract. (*Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791, 405 N.E.2d 1051.) The record indicates that defendants did not have the ability to convey the property according to the contract, because they could not convey title clear of the easements contained in the declaration of easements, covenants and restrictions which were exceptions on the commitment. Accordingly, the contract was properly terminated by plaintiff, and no anticipatory breach occurred.

We hold that plaintiff has affirmatively shown that the circuit court abused its discretion. Plaintiff is entitled to the return of his earnest money plus the interest accrued thereon.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand this cause with instructions that plaintiff's earnest money plus interest accrued thereon be returned.

Reversed and remanded with instructions.

MANNING, P.J., and O'CONNOR, J., concur.