FIFTH DIVISION

DECEMBER 10, 2004

No. 1-03-0378

SUSAN MIKULECKY, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. )

)

FRANK BART, Individually; BAIRD AND WARNER )

MANAGEMENT GROUP, By and Through its )

Agency and/or Employment Relationship with )

AMERICA MOYENO, and COMMODORE/ )

GREEN BRIER LANDMARK CONDOMINIUM )

ASSOCIATION, a not-for-profit corporation, )

By and Through its Agency and/or Employment )

Relationship with AMERICA MOYENO, ) Honorable

) John Laurie,

Defendants-Appellees. ) Judge Presiding.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Susan Mikulecky, appeals from entry of an order of the circuit court of Cook County granting summary judgment in favor of defendant, Frank Bart, on counts I through IV of plaintiff's third amended complaint alleging misrepresentation in the sale of a condominium unit.
(footnote: 1)  On appeal, plaintiff contends that material issues of fact remain in dispute such that entry of summary judgment was improper.  For the following reasons, we reverse the judgment of the trial court, vacate its entry of summary judgment, and remand this matter for further proceedings.

BACKGROUND

The record reveals the following relevant facts.  Defendant was the owner of condo­minium unit No. 508 (the unit), located  in the Commodore/Green Brier Landmark Condominium Association (Association), 550 West Surf Street, Chicago, between 1996 and 1999.  The Association, which contains in excess of 200 units, contracted for management services with Baird & Warner Management Group (Baird & Warner).  Sometime prior to October 12, 1999, defendant submitted his candidacy for a position on the board of directors (Board).  On or about October 12, 1999, members of the Board met in some capacity to address capital expenditures for the year 2000 and to prepare a draft budget.  On October 27, 1999, the draft budget was revised, resulting in a proposed budget, which was circulated to unit owners by Baird & Warner.  

Sometime in October 1999, defendant listed his unit for sale with a licensed realtor.  On or about November 3, 1999, defendant withdrew as a candidate for the board of directors.

On November 8, 1999, plaintiff entered into a written real estate contract to purchase defendant's condominium unit.  On November 10, 1999, during the "attorney approval" period of the real estate contract, plaintiff's attorney, Mary York, requested that defendant provide a copy of the proposed budget for the Association, along with a statement of capital expenditures anticipated by the unit owners within the current or succeeding two fiscal years, pursuant to section 22.1 of the Illinois Condominium Property Act (the Condominium Act or the Act).  765 ILCS 605/22.1(a)(3) (West 2002).

In a letter dated November 15, 1999, defendant's attorney, Joseph F. Madonia, stated that defendant did not agree to disclosure of any capital expenditures "anticipated" by the Association within the year 2000, but would disclose any such expenditures that were "approved."  York  rejected Madonia's modification, crossing out the paragraph in his letter wherein he requested the modification and signed at the bottom of the page.  

Thereafter, York provided defendant with a blank condominium disclosure statement (Disclosure) to be completed by a representative of the Association. 

The Association's property manager, America Moyeno, an employee of Baird & Warner, completed the Disclosure on November 18, 1999, providing that the following capital expenditures were anticipated for the current and next two years:  facade repairs including tuck pointing and brick replacement; roof replacement; concrete repairs/replacement; and "HVAC" renovations.  Madonia sent York a copy of the proposed budget, along with the completed Disclosure.  

On November 23, 1999, York reviewed the completed Disclosure and contacted Moyeno to ask if there were "sufficient reserves to cover anticipated capital expenditures as outlined in paragraph 3 of said disclosure."  At that time, Moyeno informed York that no special assessments were anticipated and that the Association possessed sufficient reserves to cover the cost of any anticipated expenditures. York approved the Disclosure and plaintiff completed the purchase of the unit and took possession of the property on January 29, 2000.

On or about May 10, 2000, plaintiff attended a meeting of the Board and learned for the first time that the Association planned numerous capital expenditures for the building including custom replacement windows at each owner's expense.  At that time, plaintiff received a copy of a letter dated October 27, 1999, signed by Patricia A. Bialek, vice president of Baird & Warner.  The letter purported to be a cover letter circulated to all unit owners along with the proposed budget on October 27, 1999, and detailed the proposed capital expenditures for 2000, including probable sources of funding for new custom replacement windows:

"The Board is also researching a window replacement program to begin in early 2000.  The scope of this work will exceed capital reserve funds currently available therefore we are also investigating the ability of the Association to borrow funds to make these necessary improvements.  The Securing of a loan would result in an increase to assessments therefore after the capital program is finalized the 2000 operating budget will be redrafted to include a loan payout."

Plaintiff was notified that she was personally responsible for window replacement expenses for her unit totalling $10,370.01.   

On December 8, 2000, plaintiff filed a five-count complaint against defendant and codefendants for intentional misrepresentation, fraudulent misrepresentation, fraudulent concealment, breach of contract and violations of the Condominium Act, seeking monetary damages for alleged failure to disclose certain capital expenditures as communicated in the letter of October 27, 1999.

In a discovery deposition, Patricia Bialek testified that the October 27, 1999, letter was circulated to all unit owners under the doors of their respective units, along with the proposed budget for the year 2000.  In his discovery deposition, defendant expressly denied ever having received the letter of October 27, 1999, and denied knowledge of the upcoming window replacement program. 

On October 25, 2002, this matter was arbitrated pursuant to the circuit court of Cook County rules of arbitration and Supreme Court Rule 86(a) (155 Ill. 2d 2d R. 86(a)).
(footnote: 2)  At that time, the panel of arbitrators issued an award finding in favor of plaintiff and against the Association in the amount of $20,000, and finding in favor of defendant and against plaintiff on all counts.  At oral argument, the parties informed this court that the arbitration award was rejected. by the parties and that the case reverted to the trial court.

On November 14, 2002, defendant filed a motion for summary judgment and supporting memorandum.  Therein, defendant argued that he was entitled to summary judgment because the "uncontroverted evidence" shows that:  (1) defendant made full disclosure under the terms of the real estate contract and the Condominium Property Act; (2) plaintiff received a statement from the Association Board containing all the anticipated capital expenditures; (3) the information contained in the Disclosure was complete and accurate as of the date of disclosure; (4) plaintiff's real estate counsel verified with the Board representative that the information contained on the Disclosure was accurate and complete prior to the real estate closing; and (5) no action was taken by the Board to approve additional capital expenditures until several months after the sale of the condominium.

In support of his motion, defendant included the affidavit of Moyeno, dated August 21, 2001, wherein she avers that as of November 18, 1999, the Disclosure she executed was complete as to proposed capital expenditures. 

On December 23, 2002, the trial court granted summary judgment in favor of defendant and against plaintiff on all counts of plaintiff's complaint.  Plaintiff's timely appeal followed.

OPINION

On appeal, plaintiff contends that the trial court erred in granting summary judgment in favor of defendant. 

Summary judgment is appropriate where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  735 ILCS 5/2-1005 (c) (West 2002); 
Espinoza v. Elgin, Joliet & Eastern Ry. Co.
, 165 Ill. 2d 107, 113 (1995).  The purpose of summary judgment is to determine whether a question of fact exists.  
Gilbert v. Sycamore Municipal Hospital
, 156 Ill. 2d 511, 517 (1993).  Although summary judgment is encouraged to aid in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should thus be allowed only when the movant's right is clear and free from doubt. 
Busch v. Graphic Color Corp.
, 169 Ill. 2d 325 (1996);  
Purtill v. Hess
, 111 Ill. 2d 229, 240 (1986).  Therefore, where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment is properly denied and the issue is decided by the trier of fact.  
Espinoza
, 165 Ill. 2d at 114.  Our review of the evidence is 
de novo
.  
Espinoza
, 165 Ill. 2d at 113.

Plaintiff contends that a question of fact remains as to defendant's knowledge of the proposed window replacement expenditure.  Plaintiff argues that whether defendant intentionally withheld the letter of October 27, 1999, purportedly sent to all condominium unit owners as a cover letter along with the proposed budget for the year 2000, and which revealed an intention to expend capital on a building-wide window replacement at each unit owners' expense, constitutes 

an unresolved material question of fact.

Plaintiff argues that material questions of fact remain in dispute as to whether defendant violated section 22.1 of the 
Condominium
 
Act
.  We therefore examine the history of the Act in order to ascertain its legislative intent.  In 1963, the Illinois legislature enacted the 
Illinois Condominium Property Act
 to give statutory recognition to the form of property ownership known as the "
condominium." 
 See Ill. Rev. Stat. 1963, ch. 30, §§ 301 through 321).  On May 9, 1972, Representative David Regner introduced a bill in the Illinois House to add section 22, describing it as a "truth in selling" provision.  77th Ill. Gen. Assem., House Proceedings,  May 15, 1972, at 149.  When the bill was debated in the Senate, its sponsor there, Senator Graham, explained that the bill was directed toward 
providing information for the elderly, and presumably those on fixed incomes, so that they would be financially aware at the outset of purchase nego­tiations. 77th Ill. Gen. Assem., Senate Debates, June 21, 1972, at 91.  One of the primary forces noted for the passage of disclosure legislation was the need for purchaser protection from hidden long-term condominium management agreements entered into between project development and management groups which had the same principal parties.  See, 
e.g.
,  
Giacomazzi v. Urban Search Corp.
, 86 Ill. App. 3d 429, 407 N.E. 2d 621 (1980),
 citing T. Krebs, 
The Legislative Response to "Sweetheart" Management Contracts:  Protecting the Condominium Purchaser
, 55 Chi.-Kent L. Rev. 319 (1979)
.  
Section 22 was designed to alleviate these practices by requiring that on the initial sale or offering for sale of any condominium unit,  the seller provide certain descriptive documents relative to the condominium project as follows:
 "(a) the Declaration; 
(b) the Bylaws of the association; 
(c) a projected operating budget for the condominium unit to be sold to the prospective buyer, including full details concerning the estimated monthly payments for the condominium unit, estimated monthly charges for maintenance or management of the condomin­ium property, and monthly charges for the use of recreational facilities; and
(d) a floor plan of the apartment to be purchased by the prospective buyer and the street address of the unit, if any, and if the unit has no unique street address, the street address of the project."  Ill. Rev. Stat. 1977, ch. 30, par. 322.

Several other disclosure requirements for developers of conversion condominiums were  added by amendment beginning in 1980.  See, Ill. Rev. Stat. 1979, ch. 30 par. 322(e).  Also in 1980, the legislature sought to amend the disclosure requirements for owners in the resale of condominium units.  Pub. Act. 81-897, § 1, eff. January. 1, 1980; amended by Pub. Act. 83-1271, § 1, eff. August 30 1984; Pub. Act. 87-692, § 1, eff. January 1, 1992; see also765 ILCS 605/22.1 (West 2002).  The disclosure requirement added by amendment to section 22.1, pertinent to the present case,  provides as follows:

"(a) In the event of any resale of a condominium unit by a unit owner other than the developer such owner shall obtain from the Board of Managers and shall make available for inspection to the prospective purchaser, upon demand, the following:

* * *

(3) A statement of any capital expenditures anticipated by the unit owner's association within the current or succeeding two fiscal years."  765 ILCS 605/22.1(a)(3) (West 2000).

A plain reading of section 22.1(a)(3) of the Act reveals that its purpose, like that of the original section 22,  is to encourage disclosure by the seller of a condominium unit for the protection of the prospective purchaser.  Our supreme court has held that public policy, while difficult to define precisely, "concerns what is right and just and what affects the citizens of the State collectively. [Public policy] is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions."  
Palmateer v. International Harvester Co.
, 85 Ill. 2d 124, 130,  421 N.E.2d 876 (1981).  The legislative mandate to sellers is clear in this case:  disclosure of information in furtherance of the public policy of Illinois

Nikolopulos v. Balourdos
, 245 Ill. App. 3d 71, 77, 614 N.E.2d 412 (1993), is a judicial decision that furthers the public policy of disclosure in the sale of a condominium unit as required by the Act.  
There, the plaintiff entered into a real estate contract with the defendants to purchase a condominium unit.  The parties were unable to close at the scheduled time in June 1990, and agreed to postpone the closing pending the revelation of the true owner of the property.  On the date of the rescheduled closing, plaintiff received the association's 1989 financial statements for the first time. The financial statements revealed that a window replacement project was to commence that same year for a total cost of $2,750,000, and to be performed over a period of five to seven years.  The plaintiff filed a declaratory judgment action to terminate the contract.  The trial court entered judgment for defendants and declared the plaintiff's earnest money forfeited.  

On appeal, this court reversed, holding the contract was unenforceable against the plaintiff because, 
inter alia
, the plaintiff's agreement to extend the closing did not serve as a waiver of plaintiff's right to review the association's financial statements.  The court stated that the purpose of the Act is "to prevent prospective purchasers from buying a unit without being fully informed and satisfied with the financial stability of the condominium as well as the management [and] rules and regulations which affect the unit. * * *  The cost of replacing the windows directly impacts upon plaintiff's financial burden if he were to purchase the unit."  
Nikolopulos
, 245 Ill. App. 3d at 77.  The court found that this previously undisclosed condition allowed plaintiff to terminate the contract and entitled him to the return of his earnest money plus interest.
 

In the present case, information pertinent to the financial status of the Association was similarly withheld from plaintiff which may have affected her decision to purchase defendant's unit and raises disputed material issues of fact.  The record contains evidence showing that plaintiff was not informed about the window replacement project, a substantial and not insignificant expenditure, which was apparently anticipated within a month of the time plaintiff entered into a contract to purchase defendant's unit.  The record contains questions of fact as to whether defendant provided to plaintiff all of the vital financial information necessary to make an informed decision as to whether to purchase defendant's condominium unit 508, 
to wit
:  the record fails to resolve the circumstances by which defendant was able to submit his name as a candidate for the Board, attend a meeting wherein the financial expenditures for the Association were discussed, withdraw his name from candidacy, place his unit on the market, and then deny knowledge of the upcoming window replacement program.  In addition, the veracity of the affidavit of America Moyeno, declaring that on the specific date of November 18, 1999, no capital expenditures other than those contained in the disclosure statement she executed on that date were anticipated for the upcoming two years is questionable, in light of the letter of October 27, 1999, which emanated  from Moyeno's own employer, Baird & Warner.  Finally, the record fails to disclose the legal effect, if any, of the $20,000 arbitration award entered in favor of plaintiff, and how the arbitrators arrived at the award, despite the alleged later rejection of the award by the parties.
(footnote: 3) 

Defendant's argument that this court should interpret the word "anticipated," contained within the Act, as "approved" is entirely without merit and unsupported by the Act.  Defendant's further argument that he complied with his responsibilities under the Act because the burden is "shifted" to the Board to provide a complete financial disclosure is also unavailing and not supported by the Act.  As the seller of the unit, defendant was the only individual in the position to request information from the Board, and he must make a good-faith effort to do so in order to comply with the statute.  Defendant is correct in asserting that this court "must give effect to the plain and ordinary meaning of the language without resort to other tools of statutory construc­tion."  
Quad Cities Open, Inc. v. City of Silvis
, 208 Ill. 2d 498, 508, 804 N.E.2d 499 (2004).  As noted above, the Act directs "a unit owner other than the developer" to provide information regarding anticipated capital expenditures "upon demand."  Thus, upon demand, the seller of a condominium unit is required to reveal any anticipated capital expenditures to the prospective purchaser.  In the event such disclosures are requested and not provided by the seller, the purchaser should not be precluded from establishing a breach of the statute by use of summary judgment.

As stated above, summary judgment is proper only when "the movant's right is clear and free from doubt."  The record as summarized above contains multiple disputed material questions of fact so as to prevent entry of summary judgment.  Defendant's general denial of the existence  of the letter of October 27, 1999, in his answer to plaintiff's complaint ("Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 5 [of plaintiff's complaint] and on that basis denies"), and his denial of the fact that the letter addressed a capital expenditure for new custom replacement windows ("Defendant denies the allegation contained in paragraph 6"), are merely self-serving and fail to satisfy the strict requirements for entry of summary judgment.  Defendant's reiteration of his position at his discovery deposition provide no further basis for entry of summary judgment.  In light of the record, questions remain as to when and if defendant acquired knowledge of the window replacement plan or whether defendant deliberately blinded himself to the financial condition of the Association upon listing his unit for sale after three years of ownership. We therefore reverse the order of the trial court.

We further deny defendant's motion for sanctions against plaintiff pursuant to Supreme Court Rule 137 (134 Ill. 2d R 137), filed in this court during the pendency of this appeal and taken with the case.  Sanctions pursuant to Rule 137 are appropriate only where the movant has shown that the opposing party "made untrue allegations without reasonable cause."  
In re Estate of Wernick
, 127 Ill. 2d 61, 77, 535 N.E.2d 876 (1989).  Defendant has failed to show that plaintiff's pursuit of her action for fraud and misrepresentation under state law and her subsequent appeal were improper in any manner.  We find defendant's motion to be improper and wholly lacking in merit.  

For the reasons stated above, the order of the trial court is reversed, summary judgment is vacated, and this matter is remanded to the trial court for further proceedings.

Reversed and remanded.

O'BRIEN and NEVILLE, JJ., concur.

FOOTNOTES
1:
Plaintiff's claims against codefendants Baird and Warner Management Group, America Moyeno, and Commodore/Green Brier Landmark Condominium Association remain pending in the trial court.

2:
Part 18 of the rules of the circuit court of Cook County provides for "Mandatory Arbitration of Certain Civil Case," according to the supreme court rules for the conduct of Mandatory arbitration proceedings, Supreme Court Rules 86-95. 155  Ill. 2d Rs. 86-95.  Rule 18.3, entitled "Actions Subject to Mandatory Arbitration,"  provides that actions filed in the Municipal districts seeking money damages only, not in excess of $30,000, shall be assigned to an arbitration calendar. Cook Co. Ct. R. 18.3 (eff. August 1, 2001). Rule 18.7 provides that "[t]he arbitration panel shall render its award the same day the hearing is completed," and that the award shall be immediately filed with the clerk of the court, who shall serve notice of the award. Cook Co. Cir. Ct. R. 18.7
.

 

3:
See Supreme Court Rule 86, 
et seq.
  155 Ill.  2d R. 86.