# Illinois Official Reports

## Appellate Court

---

### *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865

---

| | |
|---|---|
| Appellate Court Caption | PETER L. D'ATTOMO and KATHLEEN T. D'ATTOMO, Plaintiffs-Appellants, v. THOMAS H. BAUMBECK, Individually and in His Capacity as Trustee of the Thomas H. Baumbeck Trust Under an Agreement Dated July 6, 1995; THE MUSEUM SQUARE CONDOMINIUM ASSOCIATION and THE BOARD OF DIRECTORS OF THE MUSEUM SQUARE CONDOMINIUM ASSOCIATION, Defendants-Appellees. |
| District & No. | Second District Docket No. 2-14-0865 |
| Filed | June 30, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 13-L-969; the Hon. Kenneth L. Popejoy, Judge, presiding. |
| Judgment | Appeal dismissed in part; affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | John J. D'Attomo, of Carlson Partners, Ltd., of Lombard, and Jason A. Doran, of Dickson & Hasenbalg, of Aurora, for appellants. Damon M. Fisch, of Hartnett Fisch, of Naperville, for appellee Thomas H. Baumbeck. Christopher E. Ralph, of Kovitz Shifrin Nesbit, P.C., of Buffalo Grove, for other appellees. |

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices McLaren and Zenoff concurred in the judgment and opinion.


**OPINION**

¶ 1        Plaintiffs, Peter L. D'Attomo and Kathleen T. D'Attomo, appeal from a judgment of the circuit court of Du Page County dismissing their six-count complaint against Thomas H. Baumbeck, individually and in his capacity as trustee of the Thomas H. Baumbeck Trust under an agreement dated July 6, 1995; the Museum Square Condominium Association; and the Board of Directors of the Museum Square Condominium Association. For the reasons set forth below, we dismiss the appeal in part, affirm in part, reverse in part, and remand this matter for further proceedings.

¶ 2                                I. BACKGROUND
¶ 3        This appeal arises out of a dispute concerning the sale of a condominium unit. Plaintiffs, the purchasers of the condominium unit, claim that limitations on the rental of the property were not disclosed to them prior to the closing. Plaintiffs filed their complaint on October 15, 2013. We take the following facts from plaintiffs' complaint and the exhibits appended thereto. The Museum Square Condominium (Condominium) is a residential condominium development consisting of 56 units, located at 131 West Adelaide Street, Elmhurst, Illinois. The Museum Square Condominium Association (Association) is the governing body of the Condominium. The board of directors of the Association (Board) is responsible for directing and managing the affairs of the Association. At all relevant times prior to June 21, 2013, the Thomas H. Baumbeck Trust under an agreement dated July 6, 1995 (Trust), was the legal owner of Unit 305 (Unit) in the Condominium. Thomas H. Baumbeck is the trustee of the Trust.[1]

¶ 4        For several years prior to June 2013, plaintiffs were actively seeking to purchase a condominium unit in Elmhurst. Plaintiffs intended to reside in the condominium unit after they retired and sold their existing residence. Prior to such time, plaintiffs intended to lease the condominium unit while simultaneously maintaining their existing residence. On or about April 28, 2013, plaintiffs and the Trust, acting through Baumbeck, entered into a written real estate sales contract (Contract) whereby plaintiffs agreed to purchase the Unit from the Trust. On May 7, 2013, plaintiffs, through their attorney, Samuel J. Macaluso, requested that the Trust provide "written notice to Buyer's attorney of any changes in [the] condominium documents." Further, on May 16, 2013, during the attorney-review period, plaintiffs, through Macaluso, requested that the Trust provide them with a comprehensive "22.1 Disclosure" (see 765 ILCS 605/22.1 (West 2012)), including the Condominium's declaration, bylaws, 2013 budget, 2012 financial statements, and 2012 and 2013 minutes of the meetings of the Board.

---

[1]For simplicity, we will refer to Thomas H. Baumbeck, both individually and in his capacity as trustee of the Trust, as "Baumbeck."

¶ 5    On May 22, 2013, an employee in the office of counsel for the Trust sent to Macaluso via email a copy of a condominium declaration dated June 14, 2002 (2002 Declaration). The 2002 Declaration expressly permitted the lease of units in the Condominium. Specifically, paragraph 7 of the 2002 Declaration provided in relevant part that "[a]ny Unit Owner shall have the right to lease, or permit a subsequent sublease or assignment of all (but not less than all) of his Unit upon such terms and conditions as the Unit Owner may deem acceptable, except that no Unit shall be leased, subleased or assigned for transient or hotel purposes."

¶ 6    On June 21, 2013, plaintiffs attended the closing for their purchase of the Unit. Also present at the closing were: Macaluso; the Trust's attorney; the closing agent for the title company; and Jill Bennis, the listing broker for the sale of the Unit. Plaintiffs' intention to lease the Unit during the first year of ownership was openly discussed at the closing, in the presence of the Trust's attorney. Moreover, at the closing, plaintiffs retained Bennis as the leasing broker to procure a tenant for the Unit. To this end, on or about July 10, 2013, plaintiffs entered into a lease agreement pursuant to which prospective tenants agreed to lease the Unit for a 12-month term commencing on August 1, 2013, at a rental rate of $2,600 per month.

¶ 7    Unbeknownst to plaintiffs prior to the closing, in or about 2010, the Board and the Association adopted an amendment to the 2002 Declaration (2010 Amendment) that, among other things, (1) precluded a unit owner in the Condominium from renting his or her unit unless such person owned and resided in the unit for a minimum of one year and (2) prohibited the rental of more than 10% of the units in the Condominium. (We refer to the foregoing provisions of the 2010 Amendment as the "Rental Limitations.") Baumbeck was a member of the Board as well as vice president of the Association at all relevant times, and he personally voted against adopting the Rental Limitations in 2009 when they were proposed. Prior to the closing, the 2010 Amendment was not provided to plaintiffs and the Rental Limitations were not otherwise disclosed to plaintiffs. Rather, following the closing, plaintiffs discovered a binder of documents containing the 2010 Amendment. The binder was tendered to plaintiffs at the closing by the Trust's attorney after the purchase of the Unit was funded and all documents were signed. As a result of the Rental Limitations, plaintiffs were forced to terminate their lease with the prospective tenants and sell the Unit.

¶ 8    Counts I and II of the complaint were directed against Baumbeck in his capacity as trustee of the Trust. In count I, plaintiffs alleged a violation of section 22.1(a) of the Condominium Property Act (Act) (765 ILCS 605/22.1(a) (West 2012)). Specifically, plaintiffs asserted as follows. Section 22.1(a) of the Act provides that, in connection with any resale of a condominium unit in Illinois, the seller must, upon demand, provide various documents to the prospective purchaser, including "[a] copy of the Declaration, by-laws, other condominium instruments and any rules and regulations." On May 16, 2013, plaintiffs requested that Baumbeck provide them with a comprehensive "22.1 Disclosure," including the Condominium's declaration and bylaws and the minutes of meetings of the Board. Furthermore, by letter dated May 7, 2013, plaintiffs expressly requested that Baumbeck provide them with "written notice *** of any changes in [the] condominium documents." Under section 22.1(a), Baumbeck had a duty to provide plaintiffs, as prospective purchasers, "with the current Condominium Declaration, Association Bylaws, and other rules and regulations affecting the *** Unit prior to Closing." Baumbeck breached this duty and violated the Act by failing to provide the aforementioned documents or to otherwise disclose the Rental Limitations prior to the closing.

¶ 9 Count II alleged that Baumbeck's failure to provide plaintiffs with the 2010 Amendment or to otherwise disclose the Rental Limitations prior to the closing constituted a breach of contract. In support of this count, plaintiffs alleged the following. Plaintiffs and Baumbeck entered into a valid and enforceable contract. Plaintiffs fully performed their obligations under the Contract. However, Baumbeck failed to provide plaintiffs with the 2010 Amendment or otherwise disclose the existence of the Rental Limitations prior to the closing. The failure to provide plaintiffs with the 2010 Amendment or otherwise disclose the Rental Limitations prior to the closing constituted a breach of the Contract.

¶ 10 Count II further alleged that every contract in Illinois contains an implied covenant of good faith and fair dealing. By entering into the Contract, Baumbeck impliedly promised that he would: (1) perform his contractual obligations in good faith, with proper motive, and not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties; (2) in advance of the sale, make the disclosures required by the Contract and section 22.1(a) of the Act in a manner sufficient to apprise plaintiffs of the Rental Limitations and any other rules, regulations, or restrictions affecting the Unit; (3) refrain from conduct that would interfere with, frustrate, or preclude plaintiffs from obtaining ownership rights in the Unit consistent with the provisions of the Condominium declaration and bylaws provided to plaintiffs during the attorney-review period, including the right to lease the Unit during their first year of ownership; and (4) convey ownership of the Unit to plaintiffs free of undisclosed restrictions that would materially affect plaintiffs' use and enjoyment of the Unit, including the right to lease the Unit during their first year of ownership. In breach of the contractual obligations owed to plaintiffs under the Contract, Baumbeck failed to provide plaintiffs with a copy of the 2010 Amendment or otherwise disclose the Rental Limitations prior to the closing, but instead surreptitiously included the 2010 Amendment in a binder of documents delivered to plaintiffs for the first time after all documents were signed at the closing and after the transaction was funded. By denying plaintiffs any reasonable opportunity to discover the 2010 Amendment and the Rental Limitations prior to the closing, Baumbeck interfered with, frustrated, and precluded plaintiffs from obtaining ownership rights in the Unit as contemplated by the Contract.

¶ 11 Counts III and IV of plaintiffs' complaint were directed against Baumbeck, both individually and in his capacity as trustee of the Trust. Count III of the complaint, titled "Fraudulent Concealment," alleged as follows. Baumbeck had constructive knowledge of the Rental Limitations by virtue of his position as a member of the Board and vice president of the Association when the Rental Limitations were voted upon and adopted. Baumbeck also had actual knowledge of the Rental Limitations, as evidenced by the fact that he personally voted against adopting them. He also knew that the Rental Limitations would materially affect an owner's use and enjoyment of the Unit, because, on information and belief, Baumbeck himself was leasing the Unit to a tenant. Baumbeck knowingly concealed a material fact, *i.e.*, the existence of the Rental Limitations, with the intent to deceive plaintiffs and to induce the false belief that nothing precluded plaintiffs from leasing the Unit, as evidenced by the fact that Baumbeck surreptitiously included the 2010 Amendment in the binder of documents tendered to plaintiffs for the first time after all documents were signed at the closing and after the transaction was funded. Baumbeck had the opportunity, for several weeks prior to the closing, to provide plaintiffs with a copy of the 2010 Amendment or otherwise disclose the Rental Limitations to plaintiffs and was under a duty to disclose the Rental Limitations pursuant to

section 22.1(a) of the Act. Baumbeck had knowledge of the falsity of his misrepresentation, intended to deceive plaintiffs, and intended that his misrepresentation induce plaintiffs to proceed with their purchase of the Unit. Plaintiffs reasonably and justifiably relied on the failure to disclose the Rental Limitations. The Rental Limitations were material facts in connection with plaintiffs' decision to purchase the Unit, as plaintiffs would not have agreed to purchase the Unit had they known of the Rental Limitations. Count IV of the complaint essentially repeated the allegations of count III, except that, in lieu of fraudulent concealment, it alleged fraudulent misrepresentation.

¶ 12        Counts V and VI of plaintiffs' complaint were directed against Baumbeck individually, the Association, and the Board. In count V, plaintiffs sought to state a claim for breach of fiduciary duty. In count VI, plaintiffs sought to state a claim for constructive fraud. The allegations in counts V and VI were essentially identical and provided as follows. Upon the closing, plaintiffs became owners in the Condominium and members of the Association. Pursuant to the Act, the officers of the Association, the Board, and each individual member of the Board owe a fiduciary duty to each unit owner in the Condominium. By operation of law, a breach of fiduciary duty by a member of the Board results in liability for the Board and each of its individual members. Baumbeck, the Board, and each individual member of the Board owed plaintiffs (1) a fiduciary duty of care and loyalty and (2) the duty to act with the utmost honesty, good faith, and fairness in all matters relating to the administration of the Association and plaintiffs' interest in the Unit. In breach of his fiduciary duty, Baumbeck failed to act honestly and in good faith toward plaintiffs relative to their interests in the Unit by, among other things: (1) failing to disclose the Rental Limitations; (2) affirmatively concealing the 2010 Amendment; (3) ignoring, refusing, and rejecting plaintiffs' efforts to address and remedy the fraudulent conduct when detected after the closing; (4) intentionally remaining silent and failing to act honestly and in good faith toward plaintiffs to address and remedy the fraudulent conduct when detected after the closing; and (5) wrongfully placing his own personal interests above the interests of plaintiffs relative to the Unit. This breach of fiduciary duty results in liability for the Board, each individual member of the Board, and the Association.

¶ 13        Counts V and VI further alleged that article IV, section 12, of the bylaws of the Association provides that, with certain exceptions not applicable here, all meetings of the Board shall be open to all members of the Association. In contravention of this provision, and in breach of the fiduciary duties owed to plaintiffs, the Board (1) refused and rejected plaintiffs' request to attend a special meeting the Board held on July 28, 2013, to furnish information relating to the circumstances surrounding their purchase of the Unit and the concealment of the Rental Limitations and (2) impeded and failed to cooperate with plaintiffs in their effort to communicate with the Board concerning the circumstances surrounding their purchase of the Unit and the concealment of the Rental Limitations. This breach of fiduciary duty and violation of the bylaws was particularly damaging because, on information and belief, the Board accepted as true, without any input from plaintiffs, certain false and defamatory statements by agents of Lieberman Management Services, Inc., to the effect that plaintiffs had knowledge of the Rental Limitations prior to the closing. Counts V and VI also alleged that the Board and the individual members of the Board breached fiduciary duties owed to plaintiffs, separate and apart from any imputed liability arising from the conduct of Baumbeck, by (1) failing to ensure that article IV, section 12, of the bylaws was followed and (2) failing to properly investigate

the facts and circumstances surrounding plaintiffs' purchase of the Unit and the concealment of the Rental Limitations by Baumbeck. Both counts further alleged that the conduct of the Board and the individual members of the Board was intentional, grossly negligent, and fraudulent.

¶ 14 With respect to each of the six counts in their complaint, plaintiffs alleged that they suffered damages as a direct and proximate result of the foregoing conduct of Baumbeck, the Association, and the Board. Plaintiffs attached to their complaint the following documents: (1) a copy of the Contract; (2) correspondence dated May 7, 2013, and May 16, 2013, between Macaluso and the attorney for the Trust; (3) portions of the 2002 Declaration, including paragraph 7; (4) a letter dated June 24, 2010, notifying unit owners that the Rental Limitations had been adopted effective May 19, 2010, along with a copy of the text of the 2010 Amendment; (5) the July 10, 2013, lease between plaintiffs and the prospective tenants; (6) Baumbeck's proxy/ballot dated November 15, 2009, showing his vote with respect to the proposal to impose the Rental Limitations; and (7) article IV, section 12, of the Association's bylaws.

¶ 15 On January 30, 2014, the Association and the Board moved to dismiss the counts against them, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)). In their motion, the Association and the Board asserted that the allegations in counts V and VI stemmed almost exclusively from actions taken prior to the closing of the sale of the Unit. The Association and the Board argued that they did not owe a fiduciary duty to plaintiffs prior to the closing, as plaintiffs were not owners in the Association at that time. The Association and the Board further asserted that plaintiffs' remaining allegations–that the Board refused to allow plaintiffs to attend a meeting after the closing–did not establish that a fiduciary duty was breached. The Association and the Board also argued that the counts against them should be dismissed based on an exculpatory provision contained in the Association's bylaws and on the business-judgment rule.

¶ 16 On February 27, 2014, the trial court granted the motion of the Association and the Board and dismissed "without prejudice" counts V and VI against them. The court found that the allegations against the Association and the Board were conclusory and without any factual basis. In addition, the court questioned how prohibiting plaintiffs from attending the July 28, 2013, meeting could constitute the proximate cause of plaintiffs' damages. The court granted plaintiffs leave to refile counts V and VI as they pertained to the Association and the Board.

¶ 17 Also on February 27, 2014, Baumbeck filed a motion to dismiss the allegations against him, pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2012)). With respect to count I of the complaint, Baumbeck argued that plaintiffs did not have a cause of action under the Act, because they failed to timely request the Condominium documents under section 14(c) of the Contract, which provides that the buyer has five business days from the date of acceptance to demand from the seller "items as stipulated by the [Act]." Baumbeck further argued that, regardless of the timeliness of the request, plaintiffs had no remedy available under the Act, as it provides only for preclosing remedies, *e.g.*, terminating the Contract and requesting the return of the earnest money. With respect to count II, Baumbeck claimed that, absent a timely request from plaintiffs, he had no duty under the Contract to provide any Condominium documentation to plaintiffs, and, therefore, there could be no cause of action for breach of contract or for breach of the implied covenant of good faith and fair dealing. Baumbeck further asserted that plaintiffs' allegations of fraudulent concealment

(count III), fraudulent misrepresentation (count IV), and constructive fraud (count VI) must be dismissed because they were based upon the alleged implied duty to provide plaintiffs with information regarding the restrictions on renting the Unit and Illinois does not recognize a cause of action for fraud based upon misrepresentations regarding implied obligations. Finally, Baumbeck argued that plaintiffs failed to establish that he owed a fiduciary duty to plaintiffs as alleged in count V. In this regard, Baumbeck noted that the Association owed a duty only to each unit owner, which plaintiffs became only at the closing. He further stated that he was not a member or officer of the Board once the property was sold to plaintiffs, as he was no longer a unit owner. In support of this latter claim, Baumbeck attached his own affidavit.

¶ 18    On April 1, 2014, plaintiffs filed a response to Baumbeck's motion to dismiss and a motion to strike Baumbeck's affidavit. With respect to the latter motion, plaintiffs argued that Baumbeck's affidavit failed to satisfy the requirements of Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013), as it consisted of legal conclusions concerning his status with respect to the Association and the Board.

¶ 19    On April 24, 2014, the trial court held a hearing on the parties' motions. Initially, the court denied plaintiffs' motion to strike Baumbeck's affidavit. The court then granted Baumbeck's motion and dismissed with prejudice all six counts against him. The order entered on April 24, 2014, provides that it is "a final and appealable order." On May 20, 2014, plaintiffs filed a "Motion to Vacate, Alter and/or Amend" the judgment entered on April 24, 2014. On August 5, 2014, following a hearing, the trial court denied plaintiffs' motion in its entirety. The August 5, 2014, order provides that the final and appealable language in the order of April 24, 2014, "was intended as a Rule 304(a) finding that there is no just reason to delay appeal." See Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). On August 29, 2014, plaintiffs filed a notice of appeal from the orders entered on February 27, 2014, April 24, 2014, and August 5, 2014.

¶ 20                                    II. ANALYSIS
¶ 21                                    A. Jurisdiction
¶ 22    Before we reach the merits of plaintiffs' appeal, we address the issue of our jurisdiction as it pertains to the dismissal of counts V and VI against the Association and the Board. Although neither the Association nor the Board contests jurisdiction in this case, we have an independent duty to confirm our jurisdiction and dismiss an appeal, or portion thereof, if jurisdiction is lacking. *In re Marriage of Alyassir*, 335 Ill. App. 3d 998, 999 (2003).

¶ 23    The counts against the Association and the Board were dismissed "without prejudice" pursuant to the order entered by the trial court on February 27, 2014. Except as provided by statute or the rules of our supreme court, a court of review lacks jurisdiction to review judgments, orders, or decrees that are not final. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); *Department of Transportation ex rel. People v. 151 Interstate Road Corp.*, 209 Ill. 2d 471, 478 (2004); *Cole v. Hoogendoorn, Talbot, Davids, Godfrey & Milligan*, 325 Ill. App. 3d 1152, 1153 (2001). Our supreme court has stated that including in an order a statement that a dismissal is "without prejudice," such as occurred here, clearly manifests the intent of the trial court that the order not be considered final and appealable. *Pfaff v. Chrysler Corp.*, 155 Ill. 2d 35, 63 (1992), *overruled on other grounds by ABN AMRO Mortgage Group, Inc. v. McGahan*, 237 Ill. 2d 526 (2010); *Flores v. Dugan*, 91 Ill. 2d 108, 114 (1982); see also *Paul H. Schwendener, Inc. v. Jupiter Electric Co.*, 358 Ill. App. 3d 65, 73 (2005) ("An order dismissing an action 'without prejudice' is not deemed final for purposes of appeal ***."). In light of this

authority, we lack jurisdiction to consider that portion of plaintiffs' appeal from the order of February 27, 2014, dismissing counts V and VI against the Association and the Board.

¶ 24    In so finding, we acknowledge case law providing that "the effect of a dismissal order is determined by its substance, and not by the incantation of any particular magic words." *Schal Bovis, Inc. v. Casualty Insurance Co.*, 314 Ill. App. 3d 562, 568 (1999). However, as the supreme court has stated, while "substance rather than form may determine whether a *general* order of dismissal represents a final adjudication," a court of review should "decline to engage in any interpretation of an order which *** affirmatively indicates on its face that a final adjudication was not made." (Emphasis added.) *Pfaff*, 155 Ill. 2d at 62-63; see also *Hynes v. Department of Revenue*, 269 Ill. App. 3d 697, 710 (1995) (noting that, where trial court's order does not indicate whether dismissal is with or without prejudice, a reviewing court must examine the substance of the order to determine whether the order is final). As the *Pfaff* court explained, when the trial court's dismissal order contains the phrase "without prejudice," a reviewing court is not presented with the situation "where certain 'magic words' indicative of a final decision on the merits were not included in a dismissal order such that it becomes necessary to look to the substance of the order." *Pfaff*, 155 Ill. 2d at 63. In this case, the order entered on February 27, 2014, clearly indicates that the dismissal was "without prejudice." Accordingly, it was not a final and appealable order.

¶ 25    Even if we were to examine the substance of the February 27, 2014, dismissal order, we would still find that we lack jurisdiction to consider plaintiffs' appeal from the dismissal of counts V and VI against the Association and the Board. "Normally an order striking or dismissing a complaint is not final and therefore not appealable unless its language indicates the litigation is terminated and the plaintiff will not be permitted to replead." *Cole*, 325 Ill. App. 3d at 1153; see also *Schal Bovis, Inc.*, 314 Ill. App. 3d at 567-68 (holding that, if a pleading's deficiency can be cured by simple technical amendment, the order is not appealable, but if the dismissal is due to a perceived legal deficiency, the order is final regardless of the inclusion of the phrase "without prejudice").

¶ 26    In this case, evidence other than the inclusion of the phrase "without prejudice" indicates that the February 27, 2014, order is not final. First, in ruling on the motion to dismiss at issue, the trial court clearly granted plaintiffs leave to refile the counts against the Association and the Board. See *Flores*, 91 Ill. 2d at 114 (noting that a dismissal entered without prejudice to refile clearly manifested the intent of the court that the order not be considered final and appealable); *Paul H. Schwendener, Inc.*, 358 Ill. App. 3d at 73. For instance, the court stated, "Now, if you think you can try to amend [count V] in some manner [*sic*]. It's the first time it's been pled. *** And if you think you may have something, you can try." The court later added, "You have leave to refile [count V] but you're cautioned in regard to refiling that you'll need to find something more than not allow[ing] an individual to attend a meeting." The court made a similar remark when ruling on the dismissal of count VI against the Association and the Board, stating, "And if you think you have something else other than the failure to attend a meeting, you are free to replead in that regard." Importantly, these comments by the court suggest that the dismissal was not due to a perceived legal deficiency. *Cf. Krause v. USA DocuFinish*, 2015 IL App (3d) 130585, ¶ 16 (holding that, although the trial court's order did not explicitly state whether dismissal was with prejudice, dismissal order was final and appealable because it was premised upon a lack of jurisdiction and the trial court denied the plaintiff's oral motion for leave to amend); *Schal Bovis, Inc.*, 314 Ill. App. 3d at 567-68 (concluding that, regardless of

- 8 -

the inclusion of "without prejudice" language, dismissal order was final because the trial court determined as a matter of law that the plaintiffs had not suffered any legally cognizable damages). Second, we find no indication that plaintiffs informed the trial court that they intended to stand on the counts against the Association and the Board and thereafter sought a dismissal of those counts with prejudice. See *Smith v. Central Illinois Regional Airport*, 207 Ill. 2d 578, 588 (2003) (noting that, where the trial court dismissed count without prejudice to refile, "[p]laintiff could have chosen to stand on his complaint and sought an order dismissing the complaint with prejudice, as a means of obtaining a final, appealable judgment").

¶ 27    The fact that the trial court attached a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) to the order entered on April 24, 2014, does not alter our decision. First, the April 24, 2014, order does not reference the motion to dismiss filed by the Association and the Board. To the contrary, the April 24, 2014, order expressly indicates that it was entered in response to Baumbeck's motion to dismiss. The record establishes that a Rule 304(a) finding was attached to the April 24, 2014, order because there remained pending a fee petition filed by Baumbeck. The court did not include Rule 304(a) language in the order entered on February 27, 2014, which dismissed counts V and VI against the Association and the Board. More important, a nonfinal order cannot be made final simply by including a Rule 304(a) finding. See *DeLuna v. St. Elizabeth's Hospital*, 147 Ill. 2d 57, 76 (1992) (noting that an order dismissing an action without prejudice is not final and cannot be made so simply by including a Rule 304(a) finding); *Paul H. Schwendener, Inc.*, 358 Ill. App. 3d at 73 (same); *Schal Bovis, Inc.*, 314 Ill. App. 3d at 567 (noting that a final judgment is a requirement for appealability under Rule 304(a)).

¶ 28    Because the trial court's order of February 27, 2014, is not a final order, we lack jurisdiction to review it. Consequently, we are compelled to dismiss plaintiffs' appeal from that order and consider on the merits only their arguments as they relate to the propriety of the trial court's dismissal of the counts against Baumbeck.[2]

¶ 29                                B. Baumbeck's Motion to Dismiss

¶ 30    The trial court granted Baumbeck's motion to dismiss pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2012)). A motion to dismiss pursuant to section

---

[2]During oral argument, plaintiffs' counsel, citing the interests of judicial economy, urged us to exercise jurisdiction and address the merits of the trial court's order dismissing counts V and VI against the Association and the Board since the trial court already addressed the issue, the issue was fully briefed in this court, and the issue is likely to recur on remand. In support of this argument, counsel directed us to *Aasonn, LLC v. Delaney*, 2011 IL App (2d) 101125, ¶ 27, and *People v. Braden*, 243 Ill. App. 3d 671, 679 (1993). Having reviewed those cases, we fail to see how they support plaintiffs' position. Neither *Aasonn, LLC*, nor *Braden* stands for the proposition that a reviewing court may exercise jurisdiction over a nonfinal order dismissing a count without prejudice. See *Aasonn, LLC*, 2011 IL App (2d) 101125, ¶¶ 26-27 (reversing final order of trial court dismissing the plaintiffs' complaint for lack of personal jurisdiction, but opting to address issue likely to recur on remand); *Braden*, 243 Ill. App. 3d at 678-79 (reversing final order of the trial court requiring the defendant to forfeit and transfer certain weapons pursuant to section 24-6 of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, ¶ 24-6) and opting to address issue "likely to resurface" on remand). Accordingly, those cases do not allow us to address the merits of the dismissal of counts V and VI against the Association and the Board.

2-619(a)(9) admits the legal sufficiency of the complaint but asserts some "affirmative matters" outside of the pleading that defeat the claim. *Barba v. Village of Bensenville*, 2015 IL App (2d) 140337, ¶ 19. The term "affirmative matter" refers to something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. *Lawson v. Schmitt Boulder Hill, Inc.*, 398 Ill. App. 3d 127, 130 (2010). On a section 2-619(a)(9) motion to dismiss, all well-pleaded facts and the inferences arising from those facts must be taken as true. *Chicago Title Insurance Co. v. Teachers' Retirement System*, 2014 IL App (1st) 131452, ¶ 13. A reviewing court must consider whether the existence of a genuine issue of material fact precluded the dismissal or, absent such an issue of fact, whether the dismissal was proper as a matter of law. *Springfield Heating & Air Conditioning, Inc. v. 3947-55 King Drive at Oakwood, LLC*, 387 Ill. App. 3d 906, 909 (2009). We review *de novo* a dismissal pursuant to section 2-619(a)(9). *Barba*, 2015 IL App (2d) 140337, ¶ 19; *In re G.M.*, 2012 IL App (2d) 110370, ¶ 10. Moreover, because we review the trial court's judgment, not its rationale, we may affirm for any reason supported by the record regardless of the basis cited by the trial court. *In re Estate of Mankowski*, 2014 IL App (2d) 140154, ¶ 40.

¶ 31        Additionally, the resolution of whether the trial court properly granted Baumbeck's motion to dismiss presents issues of statutory construction. Questions of statutory construction are also reviewed *de novo*. *In re G.M.*, 2012 IL App (2d) 110370, ¶ 11. The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Village of Lake in the Hills v. Niklaus*, 2014 IL App (2d) 130654, ¶ 15. The most reliable indicator of legislative intent is the language of the statute itself, which should be given its plain and ordinary meaning. *Village of Lake in the Hills*, 2014 IL App (2d) 130654, ¶ 15. Where the language of the statute is clear and unambiguous, it must be applied as written, without resort to other tools of statutory construction. *Village of Lake in the Hills*, 2014 IL App (2d) 130654, ¶ 15. Moreover, we should not depart from a statute's plain language by reading into it exceptions, limitations, or conditions that the legislature did not express, and we should avoid rendering any part of the statute meaningless or superfluous. *Village of Lake in the Hills*, 2014 IL App (2d) 130654, ¶ 15. However, we may consider the consequences that would result from construing the statute one way or another, and, in doing so, we presume that the legislature did not intend to create absurd, inconvenient, or unjust results. *Village of Lake in the Hills*, 2014 IL App (2d) 130654, ¶ 15. Only where the language of the statute is ambiguous, or where a literal interpretation of the statute would either lead to absurd results or thwart the goals of the statutory scheme, may a court look beyond the express language of the statute and consider extrinsic aids of construction. *Lansing v. Southwest Airlines Co.*, 2012 IL App (1st) 101164, ¶ 30; *NDC LLC v. Topinka*, 374 Ill. App. 3d 341, 359 (2007). With these principles in mind, we turn to plaintiffs' arguments.

¶ 32                          1. Count I: Section 22.1(a) of the Act

¶ 33        As noted previously, count I of plaintiffs' complaint was directed against Baumbeck in his capacity as the trustee of the Trust and alleged a violation of section 22.1(a) of the Act (765 ILCS 605/22.1(a)(1) (West 2012)), based on Baumbeck's failure to provide plaintiffs with the current Condominium declaration, the bylaws, and other rules and regulations affecting the Unit prior to the closing. The trial court dismissed this count, reasoning that plaintiffs had no postclosing remedy for the failure to comply with section 22.1(a) of the Act. The trial court

- 10 -

concluded that the sole remedy available to a purchaser alleging a seller's failure to comply with section 22.1(a) is termination of the purchase agreement prior to the closing. Plaintiffs argue that the trial court's conclusion is untenable, where Baumbeck failed to disclose information requested pursuant to section 22.1(a) until *after* the closing and the withheld information materially affected their rights in the Unit.

¶ 34     Section 22.1(a) of the Act (765 ILCS 605/22.1(a) (West 2012)) provides that, with respect to "any resale of a condominium unit by a unit owner other than the developer such owner shall obtain from the Board of Managers and shall make available for inspection to the prospective purchaser, upon demand," certain enumerated documents, including "[a] copy of the Declaration, by-laws, other condominium instruments and any rules and regulations." For purposes of the Act, the term "Declaration" includes any amendments thereto. 765 ILCS 605/2(a) (West 2012). The disclosure requirements imposed by section 22.1 are intended "to encourage disclosure by the seller of a condominium unit for the protection of the prospective purchaser." *Mikulecky v. Bart*, 355 Ill. App. 3d 1006, 1012 (2004); see also *Nikolopulos v. Balourdos*, 245 Ill. App. 3d 71, 77 (1993). More specifically, section 22.1 is intended "to prevent prospective purchasers from buying a unit without being fully informed and satisfied with the financial stability of the condominium as well as the management, rules and regulations which affect the unit [being purchased]." *Nikolopulos*, 245 Ill. App. 3d at 77.

¶ 35     Section 22.1 is silent with respect to any remedy for the violation of the disclosure obligations imposed by the statute. The trial court interpreted this silence as precluding any claim or remedy against a seller when the buyer does not discover until after the closing that the disclosure obligations were not satisfied. However, the absence of statutory language expressly authorizing a right of action does not preclude a private cause of action under a statute. See *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379, 386 (1982) (holding that, when a statute is enacted to protect a particular class of individuals, courts may imply a private cause of action for a violation of that statute although no express remedy has been provided); *Bier v. Leanna Lakeside Property Ass'n*, 305 Ill. App. 3d 45, 59 (1999) (noting that a private right of action for a statutory violation can be implied). Indeed, as we discuss below, this principle was applied with respect to the Act in *Nikolopulos*, 245 Ill. App. 3d 71.

¶ 36     In *Nikolopulos*, the buyer entered into a real estate sales contract in March 1990 for the purchase of a condominium unit. In conjunction with the contract, the buyer made a deposit of earnest money. Prior to the closing, the buyer's attorney requested the condominium association's financial statements. In response, the seller's attorney initially provided only the financial statements for 1987 and 1988. However, at the closing, the seller's attorney presented a copy of the condominium association's 1989 financial statement. The buyer's attorney agreed to extend the closing for one week to allow him to examine the 1989 financial statement and investigate other issues that arose. The 1989 financial statement revealed that the condominium's windows had to be replaced at a cost of $2,750,000, and that the work would be performed over a period of five to seven years. In light of this information, the buyer sought to terminate the contract and demanded the return of his earnest money. The seller refused, and the buyer brought a declaratory judgment action. The trial court entered judgment in favor of the seller and held that the buyer forfeited his earnest money. On appeal, the buyer argued that, pursuant to what is now section 22.1 of the Act, he retained the right to review the condominium association's 1989 financial statement and to terminate the sales contract if the financial statement disclosed unsatisfactory information. The seller responded that the buyer

could not terminate the contract on the basis of information contained in the 1989 financial statement, because such a right is not expressly provided by section 22.1 of the Act.

¶ 37    To determine whether section 22.1 of the Act created an implied remedy to terminate the sales contract, the *Nikolopulos* court applied a four-part test. Under that test, an implied right of action exists if: (1) the plaintiff is within the class of persons the statute is designed to protect; (2) implying a cause of action is consistent with the underlying purpose of the statute; (3) the plaintiff's injury is one the statute is designed to prevent; and (4) implying a cause of action is necessary to effectuate the purpose of the statute. *Nikolopulos*, 245 Ill. App. 3d at 77. In applying this test, the court concluded that under section 22.1 of the Act an implied right of action existed under section 22.1 of the Act for a buyer to terminate the sales contract "within a reasonable time after being furnished information revealing previously undisclosed material expenses." *Nikolopulos*, 245 Ill. App. 3d at 77. The court reasoned as follows:

> "First, section 22.1 of the Act was clearly designed to protect prospective purchasers of condominium units; therefore, [the buyer] falls within the intended protected class. Second, implying that [the buyer] may terminate the contract, if unsatisfactory information is disclosed by the documents, is consistent with assuring that a prospective purchaser is fully informed and satisfied before he buys a condominium unit. Third, the statute was designed to prevent prospective purchasers from buying a unit without being fully informed and satisfied with the financial stability of the condominium as well as the management, rules and regulations which affect the unit he is seeking to purchase. Fourth, implying that if the information contained in the documents is unsatisfactory, a prospective purchaser may terminate the contract and demand return of his earnest money effectuates the purpose of the Act." *Nikolopulos*, 245 Ill. App. 3d at 77.

The *Nikolopulos* court also reasoned that it would be "meaningless" to give a prospective purchaser a right to review section 22.1 documents "if the purchaser is left without a remedy when previously undisclosed financial conditions reveal a substantial additional financial burden on the owners of condominium units or reveal previously undisclosed defects in the unit or building." *Nikolopulos*, 245 Ill. App. 3d at 76-77.

¶ 38    Of course, *Nikolopulos* addressed a situation in which the seller's failure to comply with section 22.1 was discovered before the closing. Nevertheless, we find that the *Nikolopulos* court's reasoning applies equally where the buyer alleges that documents requested pursuant to section 22.1 were concealed until after the closing. Under such circumstances, to deprive a remedy to a buyer who does not discover a lack of compliance with his section 22.1 request until after the closing would be just as meaningless as it would be to a buyer who discovers the nondisclosure prior to the closing. Indeed, there is no language in *Nikolopulos* that limits a buyers' implied remedies under section 22.1 to preclosing remedies. The *Nikolopulos* court addressed only preclosing remedies because, in that case, the nondisclosure was discovered prior to the closing.

¶ 39    Moreover, given the purpose of section 22.1 of the Act, we find that a private right of action should be implied under the factual scenario present in this case, where plaintiffs alleged that Baumbeck concealed, until after the closing, documents they requested under section 22.1 and that the nondisclosure affected their ownership rights in the Unit. As noted above, the purpose of section 22.1 is "to prevent prospective purchasers from buying a unit without being fully informed and satisfied with the financial stability of the condominium as well as the

- 12 -

management, rules and regulations which affect the unit [being purchased]." *Nikolopulos*, 245 Ill. App. 3d at 77. Here, plaintiffs did not initiate their suit until after the sale of the Unit closed. However, plaintiffs were prospective purchasers of the Unit when Baumbeck allegedly violated section 22.1. Thus, they are members of the class of persons whom section 22.1 was designed to protect. We also find that a right of action is consistent with the underlying purpose of section 22.1. In particular, affording a right of action to a prospective purchaser aggrieved by a seller's violation of the disclosure requirements is consistent with ensuring that a prospective purchaser is fully informed and satisfied with matters affecting the condominium unit. Likewise, plaintiffs' complaint alleged that Baumbeck's failure, prior to closing, to disclose the 2010 Amendment or otherwise inform them of the Rental Limitations precluded their intended use of the Unit and required them to sell the property. Thus, plaintiffs' injury was of the kind that section 22.1 was designed to prevent, *i.e.*, the nondisclosure materially affected their rights in the Unit. Finally, as noted previously, section 22.1 is silent regarding a remedy for violations of its provisions. The disclosure obligations in section 22.1 would be ineffective, as a practical matter, if an aggrieved purchaser has no remedy against a seller who conceals a requested disclosure until after the closing. See *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 464 (1999) (noting that an implied private right of action may be found under a statute where the statute would be ineffective, as a practical matter, unless such an action were implied). Thus, implying a cause of action is necessary to effectuate the purpose of the statute. For all these reasons, we hold that section 22.1 creates an implied private right of action where the seller is alleged to have concealed documents requested by the buyer pursuant to section 22.1, the concealment is not discovered until after the closing, and the nondisclosure materially affects the buyer's rights in the condominium unit.

¶ 40    *Mikulecky*, 355 Ill. App. 3d 1006, supports the conclusion that a postclosing remedy exists for the purchaser of a condominium unit where the seller's failure to make the disclosures requested by the purchaser pursuant to section 22.1 of the Act is not discovered until after the closing. In *Mikulecky*, the plaintiff entered into a written real estate sales contract to purchase the defendant's condominium unit. On November 10, 1999, two days after the sales contract was executed, the plaintiff's attorney requested that the defendant disclose information pursuant to section 22.1, including the condominium association's proposed budget and a statement of capital expenditures anticipated by the unit owners within the current or succeeding two fiscal years. In a letter dated November 15, 1999, the defendant's attorney refused to disclose any "anticipated" capital expenditures, but agreed to disclose those capital expenditures that were "approved." The plaintiff's attorney rejected the proposed modification by striking the paragraph in which the letter requested the modification. The plaintiff's attorney then provided the defendant with a blank condominium disclosure statement to be completed by a representative of the condominium association. On November 18, 1999, the Association's property manager completed the disclosure statement, providing that capital expenditures were anticipated for the current and next two years for façade repairs, roof replacement, concrete repairs, and HVAC renovations. Upon receipt of the disclosure statement and the condominium's proposed budget, the plaintiff's attorney contacted the property manager. The property manager told the plaintiff's attorney that no special assessments were anticipated and that the association had sufficient reserves to cover the cost of any anticipated expenditures. The sale of the property closed on January 29, 2000.

¶ 41 On May 10, 2000, the plaintiff attended a meeting of the board and learned that the association planned numerous capital expenditures for the building, including custom replacement windows at each owner's expense. At that time, the plaintiff received a letter dated October 27, 1999, from the condominium's management company, detailing the proposed capital expenditures for 2000, including the source of funding for the new windows. The plaintiff was informed that she would be personally responsible for window replacement expenses in excess of $10,000. On December 8, 2000, the plaintiff filed a five-count complaint against the defendant, alleging intentional misrepresentation, fraudulent misrepresentation, fraudulent concealment, breach of contract, and violations of the Act. In a discovery deposition, the defendant expressly denied either having received the letter of October 27, 1999, or having any knowledge of the window replacement project. The defendant subsequently moved for summary judgment, which the trial court granted on December 23, 2002.

¶ 42 On appeal, the plaintiff argued that the trial court erred in granting summary judgment, because a question of fact remained as to the defendant's knowledge of the proposed window replacement project. The appellate court agreed, reversing the trial court's entry of summary judgment and remanding the cause for further proceedings. *Mikulecky*, 355 Ill. App. 3d at 1010-14. The court found that information pertinent to the financial status of the condominium association was withheld from the plaintiff and that this information might have affected her decision to purchase the defendant's unit. *Mikulecky*, 355 Ill. App. 3d at 1013. As the court explained:

> "[T]he Act directs 'a unit owner other than the developer' to provide information regarding anticipated capital expenditures 'upon demand.' Thus, upon demand, the seller of a condominium unit is required to reveal any anticipated capital expenditures to the prospective purchaser. *In the event such disclosures are requested and not provided by the seller, the purchaser should not be precluded from establishing a breach of the statute* by use of summary judgment." (Emphasis added.) *Mikulecky*, 355 Ill. App. 3d at 1013-14.

Thus, *Mikulecky* tacitly establishes that a postclosing remedy exists for the purchaser of a condominium unit where the seller fails to make the disclosures requested by the purchaser pursuant to section 22.1 of the Act and the failure is not discovered until after the closing.

¶ 43 Baumbeck nevertheless argues that the principle of *expressio unius est exclusio alterius* precludes us from recognizing a postclosing remedy under section 22.1, because a different provision of the Act, section 22 (765 ILCS 605/22 (West 2012)), references only a preclosing remedy. The principle of *expressio unius est exclusio alterius*, literally "the expression of one thing is the exclusion of another" (*In re Application of the County Collector*, 2014 IL App (2d) 140223, ¶ 18), signifies that " '[w]here a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions' " (*In re Application of the County Treasurer & ex officio County Collector*, 378 Ill. App. 3d 842, 850-51 (2007) (quoting *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 151-52 (1997))). The principle is "an aid of statutory construction, not a rule of law, and is subordinate to the primary rule that the legislative intent controls in interpreting a statute." *People v. Roberts*, 214 Ill. 2d 106, 117 (2005). "[The] maxim is applicable only to help ascertain the intent of the legislature when that intent is not clear from the plain language of the statute." *Roberts*, 214 Ill. 2d at 117.

¶ 44    In this case, we find defendant's reliance on the principle of *expressio unius est exclusio alterius* unpersuasive for several reasons. First, there is no need to resort to an aid of statutory construction, because the legislative intent behind section 22.1 is clear. The provision is intended to encourage disclosure by the seller of a condominium unit, for the protection of the purchaser. *Mikulecky*, 355 Ill. App. 3d at 1012; *Nikolopulos*, 245 Ill. App. 3d at 77. Moreover, the scope of sections 22 and 22.1 are different. Section 22 governs "the initial sale or offering for sale" of a condominium unit, whereas section 22.1 applies to the "resale" of a condominium unit. Compare 765 ILCS 605/22 (West 2012), with 765 ILCS 605/22.1 (West 2012). Section 22 expressly references only a preclosing remedy (765 ILCS 605/22 (West 2012) ("Failure on the part of the seller to make full disclosure as required by this Section shall entitle the buyer to rescind the contract for sale at any time before the closing of the contract and to receive a refund of all deposit moneys paid with interest thereon ***.")). Thus, arguably, section 22 may be read to exclude by omission any postclosing remedy for a seller's failure to make disclosures in relation to the initial sale or offering of a condominium unit. But see *In re Application of the County Treasurer & ex officio County Collector*, 378 Ill. App. 3d at 850-51 (holding that the enumeration of various *postdeed* remedies in section 22-45 of the Property Tax Code (35 ILCS 200/22-45 (West 2006)) did not preclude availability of *predeed* remedies under the principle of *expressio unius est exclusio alterius*). The same, however, cannot be said with respect to a seller's failure to make disclosures in relation to the resale of a condominium unit, because section 22.1 is silent as to *any* remedy for a violation of its provisions.

¶ 45    Additionally, Baumbeck claims that plaintiffs' rights under section 22.1 of the Act cannot be rightfully addressed, because plaintiffs "contractually waived" their right to request documents under that provision. Baumbeck alleges as follows. Section 14(c) of the Contract grants the buyer five business days from the date of acceptance to demand from the seller "items as stipulated by the *** Act." Plaintiffs failed to make a timely request for section 22.1 documents under section 14(c) of the Contract. Baumbeck further alleges that, when plaintiffs did eventually make a late request for the documents, he denied the request. We find that Baumbeck has waived his "contractual waiver" argument. See *People v. De La Paz*, 204 Ill. 2d 426, 433 (2003) (noting that a party "may waive waiver").

¶ 46    In this regard, the record unequivocally establishes that, on May 16, 2013, Macaluso requested from Baumbeck a comprehensive section 22.1 disclosure, including the Condominium's declaration, bylaws, and budget. At that time, Baumbeck did not deny plaintiffs' request on the basis that it was untimely. Instead, Baumbeck's attorney responded to plaintiffs' demand by forwarding a copy of the 2002 Declaration. Baumbeck cannot now argue that plaintiffs waived their right to the section 22.1 disclosure because their request was untimely, where Baumbeck affirmatively responded to plaintiffs' request by partially complying with it. In addition, the purpose of the statute does not comport with Baumbeck's suggestion that the failure to produce all information requested by the purchaser of a condominium unit may be abrogated by claiming an unstated denial of production. The seller, if he is to invoke a timeliness claim, should expressly state so rather than stand mute or provide only the information that he or she chooses. Accordingly, we hold that Baumbeck waived his claim that plaintiffs contractually waived their right to request documents under section 22.1.

¶ 47    In short, we find nothing in section 22.1 of the Act that precludes a postclosing remedy where the seller fails to make the disclosures requested by the purchaser pursuant to section

22.1 of the Act, the nondisclosure is not discovered until after the closing, and the nondisclosure materially affects the buyer's rights in the condominium unit. Accordingly, the trial court erred in dismissing count I of plaintiffs' complaint on the basis that the statute precludes a postclosing remedy to redress a violation of its provisions.

¶ 48                     B. Count II: Breach of Contract/Breach of Covenant
                                   of Good Faith and Fair Dealing

¶ 49     Next, plaintiffs argue that the trial court erred in concluding that count II of their complaint failed to state a claim for breach of contract or for breach of the implied covenant of good faith and fair dealing. The trial court dismissed count II, stating that "[t]here's no breach of contract in any manner." The court explained that nothing in the Contract required Baumbeck to provide the 2010 Amendment or otherwise disclose the Rental Limitations prior to the closing and that there was no demand on plaintiffs' part that he specifically disclose any rental limitations. As an additional basis for dismissing count II, the court cited the absence of a postclosing remedy for a violation of the disclosure requirements of section 22.1 of the Act. The court also found that there is no independent cause of action for breach of the implied covenant of good faith and fair dealing.

¶ 50     We first address the trial court's finding that plaintiffs failed to state a cause of action for breach of contract. To state a valid cause of action for breach of contract, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) the performance of the contract by the plaintiff; (3) the breach of the contract by the defendant; and (4) a resulting injury to the plaintiff. *Klem v. Mann*, 279 Ill. App. 3d 735, 740-41 (1996); *Hickox v. Bell*, 195 Ill. App. 3d 976, 992 (1990). In this case, plaintiffs' complaint alleged each of these elements. First, paragraphs 16 and 43 of the complaint alleged that on or about April 28, 2013, plaintiffs and Baumbeck entered into a valid and enforceable contract. Further, paragraph 44 of the complaint alleged that plaintiffs performed their obligations under the contract. Paragraphs 45 and 46 of the complaint allege that Baumbeck breached his obligations under the Contract by failing to provide plaintiffs with the 2010 Amendment or otherwise disclose the Rental Limitations prior to the closing. Paragraph 53 of the complaint alleged that, as a direct and proximate result of the alleged breach of contract, plaintiffs suffered damages. Accordingly, we find that plaintiffs have adequately alleged facts stating a cause of action for breach of contract.

¶ 51     Baumbeck nevertheless claims that plaintiffs failed to allege any indication that he had an actual duty, contained within the Contract, to provide Condominium documents to plaintiffs. However, the disclosure obligations set forth in section 22.1 of the Act were incorporated into the Contract as a matter of law. See *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 217 (1997) ("As a general principle of contract law, statutes and laws in existence at the time a contract is executed are considered part of the contract."); *Schiro v. W.E. Gould & Co.*, 18 Ill. 2d 538, 544 (1960) ("It is settled that all contracts for the purchase and sale of realty are presumed to have been executed in the light of existing law ***."); *Mitchell Buick & Oldsmobile Sales, Inc. v. McHenry Savings Bank*, 235 Ill. App. 3d 978, 985 (1992) ("The existing laws and statutes become implied terms of [a] contract as a matter of law."). In addition, "[i]t is presumed that parties contract with knowledge of the existing law." *Braye*, 175 Ill. 2d at 217. Thus, the disclosure requirements imposed by section 22.1 of the Act are

deemed part of the Contract, and Baumbeck was presumed to know that, upon demand from plaintiffs, he was required to disclose the documents set forth in section 22.1 of the Act.

¶ 52      Baumbeck contends that plaintiffs never informed him that they were purchasing the Unit as a rental property. However, Baumbeck cites no authority that required plaintiffs to inform him of their intended use of the Unit. To the contrary, section 22.1 of the Act imposes an affirmative obligation on the seller to disclose to the buyer, upon demand, a copy of the declaration, the bylaws, other condominium instruments, and any rules and regulations affecting the condominium unit being purchased. Baumbeck also reiterates his claim that plaintiffs failed to perform their duty under the Contract to make a timely request for documents. According to Baumbeck, plaintiffs had a duty to request section 22.1 documents no later than May 3, 2013. However, as we discussed above, Baumbeck waived his claim that plaintiffs' section 22.1 request was untimely.

¶ 53      Plaintiffs further maintain that count II of their complaint stated a separate claim for breach of the implied covenant of good faith and fair dealing. Although the covenant of good faith and fair dealing is implied in every contract (*The Reserve at Woodstock, LLC v. City of Woodstock*, 2011 IL App (2d) 100676, ¶ 42), in *Voyles v. Sandia Mortgage Corp.*, 196 Ill. 2d 288, 295-96 (2001), the supreme court held that an independent cause of action for breach of that implied covenant does not exist except in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued a policyholder. Pursuant to *Voyles*, the trial court properly dismissed that portion of count II of plaintiffs' complaint asserting a separate cause of action for breach of the implied covenant of good faith and fair dealing. See *Lozman v. Putnam*, 328 Ill. App. 3d 761, 766-67 (2002) (affirming dismissal of count alleging breach of covenant of good faith and fair dealing); *7-Eleven, Inc. v. Dar*, 325 Ill. App. 3d 399, 409 (2001) (noting that our supreme court has recognized cause of action for breach of duty of good faith and fair dealing in only limited circumstances).

¶ 54      Accordingly, we reverse that portion of the trial court's order dismissing count II on the basis that plaintiffs failed to state a cause of action for breach of contract. We affirm that portion of the trial court's order dismissing count II on the basis that, under the facts of this case, there is no independent cause of action for breach of the covenant of good faith and fair dealing.

¶ 55                    C. Counts III and IV: Fraudulent Concealment
                              and Fraudulent Misrepresentation

¶ 56      Next, plaintiffs argue that the trial court erred in concluding that counts III and IV of their complaint failed to state claims for fraudulent concealment and fraudulent misrepresentation, respectively. The trial court dismissed those claims on the basis that there was "absolutely no representation" concerning the existence or nonexistence of the 2010 Amendment or the Rental Limitations.

¶ 57      Count III of plaintiffs' complaint attempted to state a cause of action for fraudulent concealment. To state a claim for fraudulent concealment, a plaintiff must allege that (1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted

- 17 -

differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages. *Bauer v. Giannis*, 359 Ill. App. 3d 897, 902-03 (2005).

¶ 58     As noted previously, count III of plaintiffs' complaint alleged as follows. Baumbeck had knowledge of the Rental Limitations and knowingly concealed them by surreptitiously including the 2010 Amendment in the binder of documents tendered to plaintiffs for the first time at the closing after all documents were signed and after the transaction was funded. The concealment of the Rental Limitations was intended to induce a false belief that nothing precluded plaintiffs from leasing the Unit. Baumbeck had the opportunity for several weeks prior to the closing to provide plaintiffs with a copy of the 2010 Amendment or otherwise disclose the Rental Limitations to plaintiffs and was under a duty to do so pursuant to section 22.1 of the Act. Plaintiffs would not have agreed to purchase the Unit had they known of the Rental Limitations. Plaintiffs suffered damages as a direct and proximate result of the fraudulent concealment alleged.

¶ 59     In *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 500 (1996), the supreme court stated that, under the first element of a claim for fraudulent concealment, a duty to speak arises if the plaintiff and the defendant are in a fiduciary or confidential relationship. Such a relationship exists as a matter of law between: attorneys and clients; principals and agents; guardians and wards; and members of a partnership or joint venture. *Bremer v. Bremer*, 411 Ill. 454, 465 (1952); *Hassan v. Yusuf*, 408 Ill. App. 3d 327, 345-46 (2011). Where a fiduciary or confidential relationship does not exist as a matter of law, "facts from which a fiduciary relationship arises must be pleaded and proved by clear and convincing evidence." *Magna Bank of Madison County v. Jameson*, 237 Ill. App. 3d 614, 618 (1992); see also *Fichtel v. Board of Directors of the River Shore of Naperville Condominium Ass'n*, 389 Ill. App. 3d 951, 962-63 (2009). In this regard, a duty to speak may arise from a relationship in which the defendant is placed "in a position of influence and superiority over [the] plaintiff" by reason of "friendship, agency, or experience." *Connick*, 174 Ill. 2d at 500.

¶ 60     Absent from count III of plaintiffs' complaint is any allegation that Baumbeck occupied a fiduciary or confidential relationship resulting in a duty to disclose the 2010 Amendment and the Rental Limitations. Plaintiffs argue that nothing in *Connick* suggests or implies that a duty to disclose could not arise from the Act. However, the only case they cited that remotely supports this proposition is *Zimmerman v. Northfield Real Estate, Inc.*, 156 Ill. App. 3d 154 (1986). The *Zimmerman* court held that real estate brokers have a duty to disclose material facts under the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1981, ch. 111, ¶ 5701 *et seq.*), since they "occupy a position of trust with respect to purchasers with whom they are negotiating and owe a duty to exercise good faith in their dealing with such purchasers even absent the existence of an agency relationship." *Zimmerman*, 156 Ill. App. 3d at 162. In this case, although plaintiffs alleged that Baumbeck had a duty to provide the 2010 Amendment or otherwise disclose the Rental Limitations pursuant to section 22.1 of the Act, they did not allege that a fiduciary or confidential relationship exists as a matter of law between a seller and a buyer of a condominium unit, and they did not plead that Baumbeck, as the seller of the Unit, occupied a position of influence and superiority over them as buyers by reason of friendship, agency, experience, or otherwise such that a duty to speak arose. Moreover, assuming *arguendo* that plaintiffs established a duty to disclose under the Act arising from a fiduciary or confidential relationship, plaintiffs' fraudulent concealment count fails for an entirely separate reason. Plaintiffs' complaint lacks any allegation that they could not have

discovered the truth through reasonable inquiry or inspection, or were prevented from making a reasonable inquiry or inspection. For these reasons, we conclude that the trial court properly dismissed count III of plaintiffs' complaint.

¶ 61 Likewise, we conclude that the trial court properly dismissed count IV of plaintiffs' complaint. Although count IV is captioned as "Fraudulent Misrepresentation," plaintiffs alleged that Baumbeck's act of *concealing* the 2010 Amendment and the Rental Limitations constituted the fraudulent misrepresentation. To prove that a concealment constituted a fraudulent misrepresentation, the plaintiff must show: (1) the defendant concealed a material fact; (2) the concealment was intended to induce a false belief; (3) the plaintiff could not have discovered the truth through a reasonable inquiry or inspection and relied upon the silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently if he had been aware of it; and (5) the reliance by the plaintiff led to his injury. *Lane v. Anderson*, 345 Ill. App. 3d 256, 263 (2004). In this case, the allegations in count IV of plaintiffs' complaint, which essentially mirror those in count III, fail to allege the third element. That is, plaintiffs did not allege that they could not have discovered the 2010 Amendment or the Rental Limitations through a reasonable inquiry or inspection or that they relied upon Baumbeck's silence as a representation that the Rental Limitations did not exist. Accordingly, we also conclude that count IV of plaintiffs' complaint was properly dismissed.

¶ 62                 D. Counts V and VI: Breach of Fiduciary Duty and Constructive Fraud

¶ 63 Next, plaintiffs argue that the trial court erred in concluding that count V and count VI failed to state claims for breach of fiduciary duty and constructive fraud, respectively. The trial court dismissed counts V and VI against Baumbeck, explaining:

"Breach of fiduciary duty in paragraph 5 [*sic*]. And in regard to Mr. Baumbeck himself as an individual, there's nothing in the contract that created any duties for Mr. Baumbeck to do anything in regard to these buyers except comply with the terms of the contract and comply to [*sic*] demands that were made. And if demands were made that weren't complied with in regard to the Condo Declaration and the *** Act, buyers have their remedy not to close. Other than that, there are no other representations or warranties in the contract and no duties created other than the duties created by the contract. There's no individual duty by Mr. Baumbeck as a board member or the association or the like, that's created in any manner pursuant to the four corners of the contract, and paragraph 5 can't survive in light of that.

And when you get down to Count Six, constructive fraud against Mr. Baumbeck as an individual *** there hasn't been shown any aspect of fraud. There's no representation, there's no misrepresentation, there's nothing contractually, there's nothing pursuant to attorney approval, there's no additional documentation, there's no evidence of additional representations and warranties that are made in any sense of the word, dealing with whether this–they can use this as a rental property or not. And when *** they're taking it tenancy by the entirety, there's no expectation they're going to rent this property out ***. They can't rent out tenants by the entirety property."

¶ 64 A fiduciary relationship exists where there is special confidence reposed in one who, in equity and good conscience, is bound to act in good faith with due regard to the interest of the other. *Wolinsky v. Kadison*, 114 Ill. App. 3d 527, 533 (1983). "[A]ssociation officers and board

members owe a fiduciary or quasi-fiduciary duty to the members of the association ***." *Wolinsky*, 114 Ill. App. 3d at 533-34; see also 765 ILCS 605/18.4 (West 2012) ("In the performance of their duties, the officers and members of the board *** shall exercise the care required of a fiduciary of the unit owners."). As part of this fiduciary duty, members of the board are required to comply with the procedures in the condominium's bylaws and the strictures of the Act. *Davis v. Dyson*, 387 Ill. App. 3d 676, 692 (2008). To state a claim for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damages proximately caused thereby. *Duffy v. Orlan Brook Condominium Owners' Ass'n*, 2012 IL App (1st) 113577, ¶ 17.

¶ 65    Plaintiffs argue that the trial court erred as a matter of law in dismissing their claim against Baumbeck for breach of fiduciary duty on the basis that the Contract did not create such a duty. Plaintiffs assert that a fiduciary duty arises as a matter of law, not contract. See *Kovac v. Barron*, 2014 IL App (2d) 121100, ¶ 63. Plaintiffs contend that, pursuant to section 18.4 of the Act (765 ILCS 605/18.4 (West 2012)), Baumbeck, as a member of the board and the vice president of the Association, owed them a fiduciary duty "upon their purchase of the Unit." Plaintiffs cite instances of both preclosing and postclosing conduct that they allege to have breached this duty, including: (1) failing to disclose the Rental Limitations; (2) affirmatively concealing the 2010 Amendment; (3) ignoring, refusing, and rejecting their efforts to address and remedy the fraudulent conduct when detected after the closing; (4) intentionally remaining silent and failing to act honestly and in good faith toward plaintiffs to address and remedy the fraudulent conduct when detected after the closing; and (5) wrongfully placing his own personal interests above the interests of plaintiffs relative to the Unit.

¶ 66    To the extent that the trial court dismissed count V on the basis that a breach of fiduciary duty requires a breach of duty imposed by contract, we agree with plaintiffs that the trial court erred, because a fiduciary duty arises as a matter of law from the relationship of the parties, not from contract. See *Kovac*, 2014 IL App (2d) 121100, ¶ 63; *Miller v. Harris*, 2013 IL App (2d) 120512, ¶ 19. Nevertheless, for the reasons set forth below, we affirm the trial court's dismissal of count V.

¶ 67    As noted above, section 18.4 of the Act (765 ILCS 605/18.4 (West 2012)) sets forth the powers and duties of the members of the board of a condominium association. Relevant here, section 18.4 states, "In the performance of their duties, the officers and members of the board *** shall exercise the care required of a fiduciary of the unit owners." 765 ILCS 605/18.4 (West 2012). The fiduciary duty set forth in section 18.4 is owed by the condominium's board as well as the board's individual members. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290, ¶ 94; see also *Board of Managers of Weathersfield Condominium Ass'n v. Schaumburg Ltd. Partnership*, 307 Ill. App. 3d 614, 622 (1999) (noting that, because board members owe a fiduciary duty to the members of the association, they must act in a manner reasonably related to the exercise of that duty and the failure to do so will result in liability not only for the board, but for the individual members as well). Plaintiffs assert that Baumbeck breached the fiduciary duty created by section 18.4, with respect to both preclosing and postclosing conduct. However, as section 18.4 makes clear, the Board and its individual members owe a duty only to each *unit owner*. See 765 ILCS 605/18.4 (West 2012). Plaintiffs did not become unit owners until the closing of the transaction. As such, Baumbeck could not owe a fiduciary duty to plaintiffs with respect to any preclosing conduct, and any allegation that Baumbeck breached his fiduciary duty before the closing of the sale of the Unit must fail.

¶ 68		Moreover, in support of his motion to dismiss, Baumbeck submitted an affidavit attesting to the fact that he was no longer a member of the board "upon the close of the subject property or thereafter." Because Baumbeck was not a member of the Board at any time after the sale of the Unit, any allegations that Baumbeck breached his fiduciary duty after the closing were also properly dismissed.

¶ 69		Plaintiffs assert that the trial court should have struck Baumbeck's affidavit because it failed to satisfy the requirements of Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013). According to plaintiffs, the affidavit consisted of legal conclusions concerning Baumbeck's status *vis-à-vis* the Association, and not facts admissible in evidence as required by Rule 191. Plaintiffs further assert that, even if the statements were factual statements, they were lacking in specific factual support. Baumbeck responds that the court refused to hear plaintiffs' motion to strike, because they failed to properly bring the motion before the court. Alternatively, Baumbeck argues that plaintiffs' assertion is without merit because the statements in his affidavit were of facts within his knowledge and did not consist of legal conclusions.

¶ 70		At the outset, we note that the trial court found that plaintiffs' motion to strike Baumbeck's affidavit was not properly brought before the court. The court explained that plaintiffs, as the movants, "had the obligation" to provide the court with the motion to strike. The court stated that, because plaintiffs did not provide it with the motion "in advance," it would not consider it. Nevertheless, plaintiffs informed the court that the motion was also included in their response to Baumbeck's motion to dismiss. In fact, the court ultimately addressed the propriety of the affidavit and declined to strike it.

¶ 71		Courts of review in this state have assessed a decision whether to strike a Rule 191 affidavit under both an abuse of discretion standard and a *de novo* standard. Compare *Farmers Automobile Insurance Ass'n v. Neumann*, 2015 IL App (3d) 140026, ¶ 14 (applying abuse of discretion), with *Madden v. F.H. Paschen/S.N. Nielson, Inc.*, 395 Ill. App. 3d 362, 386 (2009) (applying *de novo* standard). We need not resolve the dispute regarding the appropriate standard of review, as our result would be the same under either standard. Rule 191 provides that affidavits submitted in connection with a motion for involuntary dismissal under section 2-619 of the Code "shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013). This court has noted that Rule 191 is satisfied if, after review of the affidavit as a whole, it appears that the affidavit is based upon the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents at trial. *McDonald v. Lipov*, 2014 IL App (2d) 130401, ¶ 34; see also *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 349 (2010).

¶ 72		In the affidavit that Baumbeck attached to his motion to dismiss, he stated in relevant part that he was neither a member of the Board nor an officer of the Association "upon the close of the subject property or thereafter." We agree with Baumbeck that these statements consist of facts within his personal knowledge and therefore satisfy the requirements of Rule 191. In particular, it appears that the affidavit is based upon Baumbeck's personal knowledge regarding his role as a member of the Board and an officer of the Association. Further, there is a reasonable inference that Baumbeck could competently testify to its contents at trial. Thus,

after reviewing the affidavit as a whole, we find that it satisfied Rule 191 and that the trial court did not err in refusing to strike it.

¶ 73 Plaintiffs nevertheless claim that, contrary to the statements contained in Baumbeck's affidavit, "the documents" reflect that Baumbeck remained on the Board after the closing on June 21, 2013. "The documents" cited in support of plaintiffs' claim is actually one document, the minutes of the July 8, 2013, Board meeting, which occurred several weeks after the closing. However, the minutes actually support the statements in Baumbeck's affidavit. The minutes list Baumbeck as an "absent" member of the Board but later state in relevant part that "[i]t was noted that Tom Baumbeck has sold his unit and *is thus no longer a member of the Board*, leaving an open Board seat which the Board can fill by appointing someone." (Emphasis added.) At that same meeting, the Board appointed another individual to fill the open seat. In other words, the import of the minutes is that Baumbeck ceased being a member of the Board upon the sale of the Unit to plaintiffs.

¶ 74 Plaintiffs also argue that the trial court improperly dismissed count VI of their complaint, which alleged constructive fraud. "Constructive fraud is 'anything calculated to deceive, including acts, omissions and concealments involving a breach of legal or equitable duty, trust or confidence resulting in damage to another.' " *Kovac*, 2014 IL App (2d) 121100, ¶ 64 (quoting *Duffy*, 2012 IL App (1st) 113577, ¶ 33). As one court explained, constructive fraud "springs" from the breach of a fiduciary duty. *La Salle National Trust, N.A. v. Board of Directors of the 1100 Lake Shore Drive Condominium*, 287 Ill. App. 3d 449, 455 (1997). The elements of constructive fraud are: (1) a fiduciary relationship; (2) a breach of the duties that are imposed as a matter of law because of that relationship; and (3) damages. *Kovac*, 2014 IL App (2d) 121100, ¶ 64. Plaintiffs insist that their complaint satisfied all three of these elements. However, inasmuch as plaintiffs cannot establish the existence of a fiduciary duty with respect to the breach-of-fiduciary-duty count, they also fail to establish the existence of a fiduciary duty with respect to the constructive-fraud count. Accordingly, we also affirm the dismissal of count VI of plaintiffs' complaint.

¶ 75 III. CONCLUSION

¶ 76 For the reasons set forth above, we dismiss that portion of plaintiffs' appeal from the trial court's order dismissing without prejudice counts V and VI of their complaint against the Association and the Board. We affirm the trial court's ruling with respect to Baumbeck's affidavit. We also affirm the dismissal of count II of plaintiffs' complaint to the extent that it alleged a breach of the implied covenant of good faith and fair dealing as an independent cause of action, count III (fraudulent concealment), count IV (fraudulent misrepresentation), count V against Baumbeck (breach of fiduciary duty), and count VI against Baumbeck (constructive fraud). We reverse the trial court's order dismissing with prejudice count I of plaintiffs' complaint and that portion of count II alleging breach of contract. This cause is remanded for further proceedings consistent with this opinion.

¶ 77 Appeal dismissed in part; affirmed in part and reversed in part; cause remanded.